UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| Michael Sheean, *on behalf of himself and others similarly situated*, ) ) | Case No: 2:18-cv-11532-GCS-RSW |
| ) | Hon. George Caram Steeh |
| Plaintiff, ) ) | Mag. Judge R. Steven Whalen |
| v. ) ) | |
| Convergent Outsourcing, Inc. ) ) | |
| Defendant. ) ) | |

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Following over a year of vigorously contested litigation, and as a result of extensive arm's-length negotiations, in part before the Hon. Diane Welsh (Ret.), Michael Sheean ("Plaintiff") and Convergent Outsourcing, Inc. ("Defendant") reached an agreement to resolve this matter, which Plaintiff filed on behalf of nationwide classes under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*[1]

---

[1] The settlement agreement and its exhibits—including proposed long-form notices, proposed postcard notices, proposed claim forms, a proposed preliminary approval order, and a proposed final approval order—are appended to the Declaration of Aaron D. Radbil, which is attached to Plaintiff's brief as Exhibit A.

In short, the parties' agreement calls for the creation two non-reversionary common funds—in the respective amounts of $3.71 million and $40,000—from which participating class members will receive payments. Plaintiff and his counsel firmly believe the settlement is fair, reasonable, adequate, and in the best interests of class members. Accordingly, Plaintiff requests that this Court enter the accompanying order granting preliminary approval of the parties' settlement.

Pursuant to Local Rule 7.1(a), undersigned counsel conferred with counsel for Defendant regarding this motion, and Defendant does not oppose the relief that Plaintiff requests.

Date: June 27, 2019

*/s/ Aaron D. Radbil*
Aaron D. Radbil
Greenwald Davidson Radbil PLLC
401 Congress Avenue, Suite 1540
Austin, Texas 78701
Tel: (512) 803-1578
Fax: (561) 961-5684
aradbil@gdrlawfirm.com

Michael L. Greenwald
James L. Davidson
Alexander D. Kruzyk
7601 N. Federal Highway, Suite A-230
Boca Raton, Florida 33487
Tel: (561) 826-5477
Fax: (561) 961-5684
mgreenwald@gdrlawfirm.com
jdavidson@gdrlawfirm.com
akruzyk@gdrlawfirm.com

Andrew Campbell
Attorney at Law

2

1000 Beach Street, Suite B West Entrance
Flint, MI 48502
Phone: (810) 232-4344
michiganbk@gmail.com

*Counsel for Plaintiff and the proposed classes*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed electronically on June 27, 2019, via the Court Clerk's CM/ECF system, which will provide notice to all counsel of record.

*/s/ Aaron D. Radbil*
Aaron D. Radbil

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| Michael Sheean, *on behalf of himself and others similarly situated*, | )  Case No: 2:18-cv-11532-GCS-RSW |
| | ) |
| Plaintiff, | )  Hon. George Caram Steeh |
| | ) |
| v. | )  Mag. Judge R. Steven Whalen |
| | ) |
| Convergent Outsourcing, Inc. | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

**BRIEF IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# Table of Contents

Statement of the Issue Presented..................................................................1

Compelling/Most Appropriate Authorities..................................................1

Summary of the Settlement.........................................................................2

Argument.....................................................................................................5

   I.   This Court should conditionally certify the classes for settlement purposes...5

   II.  This Court should preliminarily approve the settlement as fair, reasonable, and adequate under Rule 23(e). ...............................................................5

      A.  There was no fraud or collusion underlying the parties' negotiations.........7

      B.  The complexity, expense, and duration of the litigation in this matter favors preliminary approval. .......................................................................8

      C.  The parties have sufficiently developed a record through discovery to enable Plaintiff and his counsel to make a reasoned judgment concerning settlement. ........................................................................................10

      D.  The probability of Plaintiff's success on the merits coupled with the range of possible recovery favors preliminary approval. ...........................................11

      E.  The opinions of Plaintiff and his counsel strongly favor preliminary approval....................................................................................................18

      F.  The public interest favors preliminary approval. .......................................19

      G.  Plaintiff and his counsel have adequately represented the classes. ............20

      H.  The settlement treats class members equitably. ..........................................20

   III.   This Court should approve the parties' notice plan. ..................................21

   IV.   This Court should set a final fairness hearing...........................................24

Conclusion ................................................................................................25

# Index of Authorities

## Cases

*Agne v. Papa John's Int'l, et al.*, No. 2:10-cv-01139, Doc. 389 (W.D. Wash.)......15

*Arthur v. Sallie Mae, Inc.*, 10–CV198–JLR, 2012 WL 4075238 (W.D. Wash. Sept. 17, 2012)..............................................................................................................15

*Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*, No. 15-2460, 2016 WL 4766079 (E.D. Pa. Sept. 13, 2016)...............................................................17

*Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345 (E.D.N.Y. 2006) ...........................17

*Brent v. Midland Funding, LLC*, No. 3:11 CV 1332, 2011 WL 3862363 (N.D. Ohio Sept. 1, 2011)...................................................................................................9

*Clark v. Payless ShoeSource, Inc.*, No. 2:09-cv-00915, Docs. 61, 72 (W.D. Wash.)..................................................................................................................15

*Connor v. JPMorgan Chase Bank*, No. 10 CV1284, Doc. 113 (S.D. Cal. May 30, 2014)..................................................................................................................14

*Cubbage v. The Talbots, Inc. et al.*, No. 2:09-cv-00911, Doc. 114 (W.D. Wash.)..................................................................................................................15

*Date v. Sony Elecs., Inc.*, No. 07-15474, 2013 WL 3945981 (E.D. Mich. July 31, 2013)..................................................................................................................19

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ..............................................22

*Garret v. Sharps Compliance, Inc.*, No. 1:10-cv-04030, Doc. 74 (N.D. Ill.)..........15

*Gary v. TrueBlue, Inc.*, 346 F. Supp. 3d 1040 (E.D. Mich. 2018) .........................13

*Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215 (N.D. Ill. 2016)......................14

*Granada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203 (6th Cir. 1992) .............9

*Green v. Dressman Benzinger Lavelle, PSC*, No. 1:14–CV–00142–SJD, 2015 WL 223764 (S.D. Ohio Jan. 16, 2015).......................................................................17

*Hainey v. Parrot*, 617 F. Supp. 2d 668 (S.D. Ohio 2007) ........................................8

*Hale v. State Farm Mutual Automobile Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079 (S.D. Ill. Dec. 16, 2018) ..........................................................21

*Hall v. Frederick J. Hanna & Assocs., P.C.*, 2016 WL 2865081 (N.D. Ga. May 10, 2016) ...............................................................................................17

*Henderson v. Eaton*, No. 01-0138, 2002 WL 31415728 (E.D. La. Oct. 25, 2002) ...............................................................................................18

*In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) ...............................................................................................14

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003)..................9

*In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075 (6th Cir. 1984) ..............11

*In re Jiffy Lube Int'l, Inc.*, No. 11-02261, Doc. 97 (S.D. Cal.) ...............................15

*In re Skechers Toning Shoe Prod. Liab. Litig.*, No. 3:11-MD-2308-TBR, 2013 WL 2010702 (W.D. Ky. May 13, 2013) .......................................................18

*In Re: Convergent Telephone Consumer Protection Act Litig.*, No. 3:13-md-02478-AWT, ECF No. 233 at 19-20 (D. Conn. Apr. 5, 2016).........................................13

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007) ....................................... 7, 10, 12, 19

*James v. JPMorgan Chase Bank, N.A.*, No. 8:15-cv-2424-T-23JSS, 2016 WL 6908118 (M.D. Fla. Nov. 22, 2016) ......................................................14

*Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291 (S.D. Miss. 2014) .....................10

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, No. 1:06 CV 1397, 2011 WL 1434679 (N.D. Ohio 2011) ...................................................17

*Keyes v. Ocwen Loan Servicing, LLC*, 335 F. Supp. 3d 951 (E.D. Mich. 2018) ...13

*Little-King v. Hayt & Landau*, No. 11-5621 (MAH), 2013 WL 4874349 (D.N.J. Sept. 10, 2013)...........................................................................................17

*Markos v. Wells Fargo Bank, N.A.*, No. 1:15-cv-01156-LMM, 2017 WL 416425 (N.D. Ga. Jan. 30, 2017)..........................................................................15

*Picchi v. World Fin. Network Bank*, No. 11-CV-61797-CIV-Altonaga/O'Sullivan (S.D. Fla. Jan. 30, 2015) ....................................................................................13

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011) ........................................................................................................................7

Rose v. Bank of Am. Corp., Nos. 11 C 2390 & 12 C 4009, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) ..................................................................................14

*Schell v. Frederick J. Hanna & Assocs., P.C.*, No. 3:15-cv-418, 2016 WL 1273297 (S.D. Ohio Mar. 31, 2016) ....................................................................................17

*Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673 (N.D. Cal. 2016) .....16

*Spillman v. RPM Pizza, LLC*, No. 10-349, 2013 WL 2286076 (M.D. La. May 23, 2013) ...............................................................................................................15

*Steinfeld v. Discover Fin. Servs.*, No. C 12-01118 JSW, 2014 WL 1309352 (N.D. Cal. Mar. 31, 2014) ......................................................................................15

*Stinson v. Delta Mgmt. Assocs., Inc.*, 302 F.R.D. 160 (S.D. Ohio 2014) ...............19

*Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521 (E.D. Ky. 2010) 7, 12, 18

*Thornton v. State Farm Mut. Auto Ins. Co.*, No. 1:06-CV-00018, 2006 WL 3359482 (N.D. Ohio Nov. 17, 2006) ....................................................................10

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976) ...............................9

*Whitford v. Weber & Olcese, P.L.C.*, No. 1:15-cv-400, 2016 WL 122393 (W.D. Mich. Jan. 11, 2016) ........................................................................................17

*Wilkins v. HSBC Bank Nev., N.A.*, No. 14-190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015) ...............................................................................................................14

*Williams v. Bluestem Brands, Inc.*, No. 8:17-cv-1971-T-27AAS, 2019 WL 1450090 (M.D. Fla. Apr. 2, 2019) .............................................................. 14, 23

*Wright v. Premier Courier, Inc.*, No. 2:16-CV-420, 2018 WL 3966253 (S.D. Ohio Aug. 17, 2018) ......................................................................................18

**Statutes**

15 U.S.C. § 1692k ................................................................................16

**Rules**

Fed. R. Civ. P. 23 ...................................................................... 7, 21, 24

**Treatises**

2 McLaughlin On Class Actions § 6:7 (8th ed. 2011) ...............................................8

Alba Conte & Herbert B. Newberg, Newberg On Class Actions, § 11.25 (4th ed. 2002) .......................................................................................... 6, 19

Manual For Complex Litigation § 21.632 (4th ed. 2004).................................. 6, 24

**Statement of the Issue Presented**

Whether this Court should (1) conditionally certify the settlement classes, (2) preliminarily find that the parties' settlement is fair, reasonable, and adequate, and (3) direct notice of the settlement to the settlement class members.

**Compelling/Most Appropriate Authorities**

1. *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007).

2. *Williams v. Bluestem Brands, Inc.*, No. 8:17-cv-1971-T-27AAS, 2019 WL 1450090 (M.D. Fla. Apr. 2, 2019).

## Summary of the Settlement

Through their settlement, the parties agreed to resolve this matter on behalf of two distinct classes:

> *TCPA Class*: All persons throughout the United States (1) to whom Convergent Outsourcing, Inc. placed, or caused to be placed, a call, (2) by using an automatic telephone dialing system or an artificial or prerecorded voice, (3) from November 11, 2016 through February 25, 2019, (4) either (i) directed to a number assigned to a cellular telephone service, but not assigned to the intended recipient of Convergent Outsourcing, Inc.'s calls, or (ii) directed to a number assigned to a cellular telephone service, to which Convergent Outsourcing, Inc. was previously instructed to stop placing calls or informed that the number was a wrong number.

> *FDCPA Class*: All persons throughout the United States (1) to whom Convergent Outsourcing, Inc. placed, or caused to be placed, a call, (2) from May 15, 2017 through February 25, 2019, (3) and in connection with the collection of a consumer debt, (4) after Convergent Outsourcing, Inc. was instructed to stop placing calls to his or her telephone number or informed that the number was a wrong number.

To compensate class members, Defendant will create two separate non-reversionary common funds. The respective amounts of the funds will be $3,710,000 to compensate TCPA class members, and $40,000 to compensate FDCPA class members.[2]

Paid from the TCPA common fund will be: compensation to TCPA class members; the cost of notice to TCPA class members and claims administration for

---

[2]     There are 349,744 TCPA class members and 571 FDCPA class members.

2

TCPA class members; litigation costs and expenses associated with the TCPA class, for which Plaintiff's counsel will petition this Court; reasonable attorneys' fees, calculated as a percentage of the TCPA-specific common fund, for which Plaintiff's counsel will petition this Court; and an incentive award to Plaintiff, for which Plaintiff's counsel will petition this Court.

Paid from the FDCPA common fund will be: compensation to FDCPA class members; the cost of notice to FDCPA class members and claims administration for the FDCPA class; litigation costs and expenses associated with the FDCPA class, for which Plaintiff's counsel will petition this Court; reasonable attorneys' fees, calculated as a percentage of the FDCPA-specific common fund, for which Plaintiff's counsel will petition this Court; and an incentive award to Plaintiff, for which Plaintiff's counsel will petition this Court.

A third-party claims administrator will mail notice of the parties' settlement directly to class members, together with a detachable claim form that class members can use to submit claims. The claims administrator will also establish a website that provides information about the settlement, and through which class members can submit claims electronically. As well, the claims administrator will set up a toll-free number that provides information about the settlement, and through which class members can submit claims by telephone. Finally, the claims administrator will publicize notice of the settlement through an advertisement in USA Today. After a

competitive bidding process, the parties selected KCC, LLC as the claims administrator.

Each class member who submits a valid, approved claim will be entitled to a *pro rata* share of the applicable non-reversionary common fund after deducting: costs and expenses of providing notice of, and administrating, the settlement; an award of attorneys' fees, subject to this Court's approval; reimbursement of litigation costs and expenses, subject to this Court's approval; and Plaintiff's incentive award, subject to this Court's approval.

Any class member who wishes to exclude himself or herself from the settlement can submit a request for exclusion. Likewise, any class member who wishes to object to the settlement can submit an objection.

Upon this Court's entry of a final judgment, Plaintiff and each non-excluded TCPA class member will release and forever discharge all claims under the TCPA, and analogous state laws, arising from calls that Defendant placed to TCPA class members' cellular telephones from November 11, 2016 through February 25, 2019 by using an automatic telephone dialing system or an artificial or prerecorded voice. Plaintiff and each non-excluded FDCPA class member will release and forever discharge all claims under the FDCPA, and analogous state debt collection laws, arising from calls that Defendant placed to members of the FDCPA Class from May 15, 2017 through February 25, 2019.

4

Argument

## I.   This Court should conditionally certify the classes for settlement purposes.

Under Rule 23 of the Federal Rules of Civil Procedure, the party seeking class certification must satisfy the four requirements of Rule 23(a)—referred to as numerosity, commonality, typicality, and adequacy of representation—and, in a matter like this one, the requirements of Rule 23(b)(3).

Here, the TCPA and FDCPA classes are well suited for class treatment. *See* Doc. 46, Argument at Section I. They satisfy the requirements of Rule 23(a) and Rule 23(b)(3). *See id.*, Argument at Sections II-III. And both classes are ascertainable. *See id.*, Argument at Section IV.[3] Accordingly, this Court should conditionally certify the classes for settlement purposes.

## II.   This Court should preliminarily approve the settlement as fair, reasonable, and adequate under Rule 23(e).

Rule 23(e) requires that a court preliminarily evaluate the fairness of a class action settlement:

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by the parties. If the case is presented for both class certification and settlement approval, the certification hearing and

---

[3]   Plaintiff fully incorporates by reference his previously filed motion for class certification and appointment of class counsel. Doc. 46.

5

> preliminary fairness evaluation can usually be combined. . . . The judge
> must make a preliminary determination on the fairness, reasonableness,
> and adequacy of the settlement terms and must direct the preparation of
> notice of the certification, proposed settlement, and date of the final
> fairness hearing.

Manual For Complex Litigation § 21.632 (4th ed. 2004); *see also* 4 Alba Conte &

Herbert B. Newberg, Newberg On Class Actions, § 11.25 (4th ed. 2002).

After the court makes a preliminary fairness evaluation, and notice has been

issued, the court must then hold a final fairness hearing to determine whether the

proposed settlement is truly fair, reasonable, and adequate. *See* Manual For Complex

Litigation § 21.633-34; Newberg, § 11.25.

Considering as much, preliminary approval requires only that a court evaluate

whether the proposed settlement was negotiated at arm's-length and is within the

range of possible litigation outcomes such that "probable cause" exists to

disseminate notice and begin the formal fairness process. *See* Manual For Complex

Litigation § 21.632-33.

No matter, and with the understanding that a full fairness determination is not

necessary at the preliminary approval stage, the Sixth Circuit identified seven factors

for analyzing the reasonableness and adequacy of a class action settlement: (1) the

risk of fraud or collusion; (2) the complexity, expense and likely duration of the

litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood

of success on the merits; (5) the opinions of class counsel and class representatives;

(6) the reaction of absent class members; and (7) the public interest. *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) ("UAW").[4]

As well, Rule 23(e) mandates consideration of several additional factors, including that the class representative and class counsel have adequately represented class members, and that the settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e).

Here, each relevant factor supports the conclusion that the parties' settlement is fundamentally fair, reasonable, and adequate, and that this Court should preliminarily approve it.

**A. There was no fraud or collusion underlying the parties' negotiations.**

"Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 531 (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011). Here, not only is there no evidence of fraud or collusion, but the parties' arm's-length settlement negotiations, overseen by an experienced mediator, underscore that the settlement was fairly negotiated.

---

[4]    The sixth factor—the reaction of absent class members—is unavoidably unknown at this stage here, as notice has not been disseminated.

In particular, the parties engaged in contested litigation for well over a year. And only after fact discovery in this matter closed did the parties mediate their dispute with the assistance of the Hon. Diane Welsh (Ret.).[5] Important, then, is that "[t]he participation of an independent mediator in the settlement negotiations virtually assures that the negotiations were conducted at arm's length and without collusion between the parties." *Hainey v. Parrot*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007); *see also* 2 McLaughlin On Class Actions § 6:7 (8th ed. 2011) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion.").

With this in mind, the absence of fraud or collusion underlying the parties' negotiations supports preliminary approval here.

## B. The complexity, expense, and duration of the litigation in this matter favors preliminary approval.

The Sixth Circuit recognized that complex litigation is "notoriously difficult and unpredictable." *Granada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203, 1205

---

[5]     "Hon. Diane M. Welsh (Ret.) is highly respected for her ability to successfully resolve disputes with sensitivity, patience, and persistence. Over the past 23 years, as a JAMS neutral and a United States Magistrate Judge, she has successfully resolved over 5000 matters, covering virtually every type of complex dispute. Specifically, Judge Welsh has extraordinary skill in resolving high-stakes multi-party commercial disputes, employment matters, catastrophic personal injury cases, class actions, mass torts and multi-district litigations (MDL's). She was recognized as a 2016-2018 'ADR Champion' by the National Law Journal." https://www.jamsadr.com/welsh/ (last visited June 11, 2019).

8

(6th Cir. 1992). Therefore not surprising is that "[t]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (Edmunds, J.). Indeed, "[m]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Brent v. Midland Funding, LLC*, No. 3:11 CV 1332, 2011 WL 3862363, at *16 (N.D. Ohio Sept. 1, 2011); *accord Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) (public interest in settling litigation is "particularly true in class action suits . . . which frequently present serious problems of management and expense").

Here, Plaintiff filed his class action complaint against Defendant over a year ago, alleging systematic violations of the TCPA and FDCPA on behalf of nationwide classes. *See* Doc. 1. And while fact discovery closed in May 2019, on the date the parties reached their agreement to resolve this matter expert discovery remained open, Plaintiff's motion for class certification was pending, the parties had yet to file their respective motions for summary judgment, and trial was not set to begin until late October 2019. *See* Docs. 9, 48. Moreover, at issue were complex claims under two distinct federal statutes—the TCPA and the FDCPA—on behalf of nationwide classes that include a combined 350,315 members.

Considering this, preliminary approval of the parties' settlement is appropriate. *See Thornton v. State Farm Mut. Auto Ins. Co.*, No. 1:06-CV-00018, 2006 WL 3359482, at *3 (N.D. Ohio Nov. 17, 2006) ("As a number of courts have recognized, litigation is necessarily fraught with uncertainty, such that it is often advisable 'to take a bird in the hand instead of a prospective flock in the bush.'").

### C. The parties have sufficiently developed a record through discovery to enable Plaintiff and his counsel to make a reasoned judgment concerning settlement.

In reviewing class action settlements, courts also consider the amount of discovery in which parties engage. *UAW*, 497 F.3d at 631. This includes "the degree of case development that class counsel have accomplished prior to settlement to ensure that counsel had an adequate appreciation of the merits of the case before negotiating." *Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 303-04 (S.D. Miss. 2014).

Here, the parties sufficiently developed a factual record necessary to guide their settlement discussions. This is evidenced, in a part, by the substance of the various discovery disputes the parties raised in connection with this case, and this Court's resulting orders. *See* Docs. 10, 17-20, 23, 25, 26, 31, 33, 35, 38-39, 41, 43. Additionally, Plaintiff issued, and Defendant answered and responded to—initially and through supplements—voluminous written discovery requests, including interrogatories and requests for production. As well, Plaintiff's counsel deposed

10

Defendant's Rule 30(b)(6) witness, obtained third party discovery from both AT&T, Inc., and a vendor—LiveVox, Inc.—that Defendant used to place some of the calls in question, and solicited a report from a notice and claims administration expert. *See* Doc. 46-8.

For its part, Defendant attempted to obtain additional information by issuing nine subpoenas for documents and testimony to third parties, including Sprint Corporation, Microbilt Corporation, AT&T Inc., T-Mobile USA, Inc., TransUnion Risk and Alternative Data Solutions, Inc., Verizon Communications, Inc., LexisNexis Risk Solutions, Inc., United States Cellular Corporation, and Interactive Marketing Solutions, Inc. *See* Exhibit A, at 14, ¶ 58.

The record that the parties developed through discovery was therefore adequate to enable Plaintiff and his counsel to make a reasoned judgment concerning the settlement.

### D. The probability of Plaintiff's success on the merits coupled with the range of possible recovery favors preliminary approval.

"The likelihood of success . . . provides a gauge from which the benefits of the settlement must be measured." *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984). And "[t]he fairness of each settlement turns in large part on the bona fides of the parties' legal dispute. Although this inquiry understandably does not require us to decide the merits of the case or resolve unsettled legal questions," a court must nevertheless "weigh[] the plaintiff's

11

likelihood of success on the merits against the amount and form of the relief offered in the settlement." *UAW*, 497 F.3d at 631.

Notably, in determining whether a settlement is fair in light of the potential range of recovery, a court should be guided by the important maxim that a proposed settlement may be only a fraction of the theoretical recovery, yet still fair and adequate in light of the attendant risks of litigation. *Thacker*, 695 F. Supp. 2d at 532.

Here, Plaintiff faced a number of hurdles in certifying the classes and prevailing on the merits of his claims. For example, in the TCPA context, counsel in a previous TCPA class action against Defendant summarized the issues Plaintiff potentially faced regarding certification:

> . . . Class Plaintiffs and their counsel have considered the risks inherent to litigation and the various defenses available to Convergent. The reality that Class Plaintiffs and the Settlement Class Members could end up recovering nothing or only a fraction of the settlement benefits if the Court did not certify a class . . . .

> *       *       *

> Class Plaintiffs and their counsel knew that going forward there was a significant risk that the Court would decline to certify this case as a class action. A central issue in this case is whether Convergent possessed the prior express consent of class members it called using an automated telephone dialing system. Courts have offered differing opinions in other cases under the TCPA regarding whether questions of consent require an individualized inquiry and thus denied class certification, though the majority appear to deny class certification on the consent issue.

*In Re: Convergent Telephone Consumer Protection Act Litig.*, No. 3:13-md-02478-AWT, ECF No. 233 at 19-20 (D. Conn. Apr. 5, 2016).[6]

As for the merits of Plaintiff's TCPA claims, Defendant argued that it did not use an automatic telephone dialing system to place the calls at issue—a defense to claims under the TCPA that finds possible support in opinions issued by judges in this district. *See, e.g.*, *Gary v. TrueBlue, Inc.*, 346 F. Supp. 3d 1040, 1044 (E.D. Mich. 2018) (Drain, J.) (granting the defendant's motion for summary judgment, in part because the dialer at issue did not "ha[ve] the capacity to randomly or sequentially dial"); *Keyes v. Ocwen Loan Servicing, LLC*, 335 F. Supp. 3d 951, 963 (E.D. Mich. 2018) (Drain, J.) (same).

But despite the pitfalls Plaintiff faced in connection with his TCPA claims, the parties' settlement provides for a $3.71 million non-reversionary common fund to compensate 349,744 TCPA class members. This unadjusted settlement value of $10.61 per class member meets or exceeds that of many analogous TCPA class action settlements. *See, e.g.*, *Picchi v. World Fin. Network Bank*, No. 11-CV-61797-CIV-Altonaga/O'Sullivan (S.D. Fla. Jan. 30, 2015) (finally approving a wrong number TCPA class action settlement for $2.63 per class member); *Williams v. Bluestem Brands, Inc.*, No. 8:17-cv-1971-T-27AAS, 2019 WL 1450090, at *2 (M.D.

---

[6]   While Plaintiff believes that Defendant waived any defense based on prior express consent, Defendant's position is that such a defense remains available to it.

13

Fla. Apr. 2, 2019) (preliminarily approving a wrong number TCPA class action settlement amounting to approximately $7 per class member); *James v. JPMorgan Chase Bank, N.A.*, No. 8:15-cv-2424-T-23JSS, 2016 WL 6908118, at *1 (M.D. Fla. Nov. 22, 2016) (preliminarily approving a wrong number TCPA class action settlement for $5.55 per class member).[7]

As well, Plaintiff's counsel estimates—based on historical claims rates—that after deducting the requested attorneys' fees, litigation costs and expenses, costs of notice and claims administration, and an incentive award to Plaintiff, participating TCPA class members who submit valid claims should receive between $40 and $120, which is an amount on the higher end of TCPA class action settlements generally. *See, e.g.*, *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (finding that $34.60 per person falls "within the range of recoveries" in a TCPA class action).

Indeed, per-claimant recoveries in TCPA class actions often fall within a lower range. *See, e.g.*, *Rose v. Bank of Am. Corp.*, Nos. 11 C 2390 & 12 C 4009, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) (approving a TCPA class settlement

---

[7]     *See also Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 227-28 (N.D. Ill. 2016) ($34 million for more than 32 million class members); *Wilkins v. HSBC Bank Nev., N.A.*, No. 14-190, 2015 WL 890566, at *3 (N.D. Ill. Feb. 27, 2015) ($39.98 million for more than 9,065,262 class members); *Connor v. JPMorgan Chase Bank*, No. 10 CV1284, Doc. 113 (S.D. Cal. May 30, 2014) ($11.66 million for 2,684,518 class members).

where claimants received between $20 and $40 each); *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118 JSW, 2014 WL 1309352 (N.D. Cal. Mar. 31, 2014) (TCPA class settlement resulting in less than $50 per claimant); *Arthur v. Sallie Mae, Inc.,* 10–CV198–JLR, 2012 WL 4075238 (W.D. Wash. Sept. 17, 2012) (participating TCPA class members received between $20-$40).[8]

At bottom, the TCPA-specific portion of the parties' settlement constitutes an objectively fair result. *See Markos v. Wells Fargo Bank, N.A.*, No. 1:15-cv-01156-LMM, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) (finding that the cash recovery of $24 per claimant in a TCPA class action—less than the expected recovery here—is "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter").

Regarding Plaintiff's FDCPA claims, Defendant argued that its bona fide error defense would eliminate any liability it possibly had under the FDCPA. More specifically, Defendant contended that the language in section 1692k(c) of the

---

[8]      *See also Spillman v. RPM Pizza, LLC*, No. 10-349, 2013 WL 2286076, at *4 (M.D. La. May 23, 2013) (approving a TCPA class action settlement that provides up to $15 cash payment for a TCPA violation); *In re Jiffy Lube Int'l, Inc.*, No. 11-02261, Doc. 97 (S.D. Cal.) (class members entitled to vouchers for services valued at $17.29 or a cash payment of $12.97); *Garret v. Sharps Compliance, Inc.*, No. 1:10-cv-04030, Doc. 74 (N.D. Ill.) ($28.13 recovery per claimant); *Agne v. Papa John's Int'l, et al.*, No. 2:10-cv-01139, Doc. 389 (W.D. Wash.) ($50 recovery plus $13 merchandise per claimant); *Clark v. Payless ShoeSource, Inc.*, No. 2:09-cv-00915, Docs. 61 at 3, 72 (W.D. Wash.) ($10 merchandise certificate per claimant); *Cubbage v. The Talbots, Inc. et al.*, No. 2:09-cv-00911, Doc. 114 (W.D. Wash.) ($40 or $80 merchandise certificate per claimant).

FDCPA—which states that a "debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error"—stood as an absolute bar to Plaintiff's ability to recover under the FDCPA given Defendant's procedures for coding telephone numbers in its account management system as "do not call" numbers, in order to prevent future calls to individuals who previously requested that Defendant stop calling them.

And even if Plaintiff could have prevailed on his FDCPA claims, there was no guarantee of a full statutory damages recovery at trial because the FDCPA's damages provision is permissive rather than mandatory. That is, the law provides for statutory damages awards *up to* certain amounts—$1,000 for Plaintiff, and the lesser of $500,000 or one percent of Defendant's net worth for the class—after balancing such factors as the nature of Defendant's noncompliance, the number of persons adversely affected, and the extent to which Defendant's noncompliance was intentional. *See* 15 U.S.C. § 1692k(b)(2). Accordingly, even had Plaintiff prevailed on his FDCPA claims, a jury may have awarded little in the way of statutory damages, or even none at all. *See Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 683 (N.D. Cal. 2016) ("Because damages are not mandatory, continued litigation presents a risk to Plaintiffs of expending time and money on this case with

the possibility of no recovery at all for the Class. In light of the risks and costs of continued litigation, the immediate reward to Class Members is preferable."); *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, No. 1:06 CV 1397, 2011 WL 1434679, at *11 (N.D. Ohio 2011) (analyzing the factors set forth in 15 U.S.C. § 1692k, and awarding no "additional damages' to members of the class).

Against this backdrop, $40,000 for 571 FDCPA class members— approximately $70 per class member—represents an excellent recovery, which compares favorably to other FDCPA class settlements approved throughout the country. *See, e.g.*, *Schell v. Frederick J. Hanna & Assocs., P.C.*, No. 3:15-cv-418, 2016 WL 1273297, at *3 (S.D. Ohio Mar. 31, 2016) ($10 per class member); *Whitford v. Weber & Olcese, P.L.C.*, No. 1:15-cv-400, 2016 WL 122393, at *2 (W.D. Mich. Jan. 11, 2016) (same); *Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*, No. 15-2460, 2016 WL 4766079, at *3 (E.D. Pa. Sept. 13, 2016) ($10.92 per class member); *Hall v. Frederick J. Hanna & Assocs., P.C.*, 2016 WL 2865081, at *3 (N.D. Ga. May 10, 2016) ($10 per class member); *Green v. Dressman Benzinger Lavelle, PSC*, No. 1:14–CV–00142–SJD, 2015 WL 223764, at *3 (S.D. Ohio Jan. 16, 2015) (approximately $31 per class member); *Little-King v. Hayt & Landau*, No. 11-5621 (MAH), 2013 WL 4874349, at *14 (D.N.J. Sept. 10, 2013) ($7.87 per class member); *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 355 (E.D.N.Y. 2006) ($7.32 per class member).

17

In the end, weighing the probability of Plaintiff's success, coupled with the range of possible recovery, strongly favors preliminary approval. *See Wright v. Premier Courier, Inc.*, No. 2:16-CV-420, 2018 WL 3966253, at *5 (S.D. Ohio Aug. 17, 2018) ("Accordingly, due to the existence of uncertainties inherent in their claims, Plaintiffs' likelihood of success on the merits remains uncertain. This factor therefore weighs in favor of approving the Proposed Settlement."); *Henderson v. Eaton*, No. 01-0138, 2002 WL 31415728, at *3 (E.D. La. Oct. 25, 2002) ("several fundamental issues in the case remained in dispute: whether the defendant violated the FDCPA; whether the alleged violation was merely technical; and whether the alleged violation was willful and clear. Resolving these questions through a trial and, ostensibly, an appeal, would likely be burdensome and costly.").

## E. The opinions of Plaintiff and his counsel strongly favor preliminary approval.

When it comes to class action settlements, courts accord great weight to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation. *See Thacker*, 695 F. Supp. 2d at 532 ("In deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference."); *In re Skechers Toning Shoe Prod. Liab. Litig.*, No. 3:11-MD-2308-TBR, 2013 WL 2010702, at *6 (W.D. Ky. May 13, 2013) (same).

Here, Plaintiff and his counsel firmly believe that the settlement is fair, reasonable, and adequate, and in the best interests of class members. *See* Exhibit A, at 18, ¶ 76. And this support for the settlement additionally justifies preliminary approval.

## F. The public interest favors preliminary approval.

In considering the above-referenced factors, a court should be guided by the general principle that class action settlements should be favored. *See, e.g.*, *UAW*, 497 F.3d at 632 (noting the "federal policy favoring settlement of class actions"); *Date v. Sony Elecs., Inc.*, No. 07-15474, 2013 WL 3945981, at *5 (E.D. Mich. July 31, 2013) (Borman, J.) ("Settlement of class action litigation is strongly favored in the law and as a matter of federal policy."); Newberg, § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

As the Southern District of Ohio wrote in approving an FDCPA class action settlement:

> The settlement also serves the public interest because it promotes compliance with the FDCPA, which Congress enacted in order to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses. 15 U.S.C. § 1692(e)."

*Stinson v. Delta Mgmt. Assocs., Inc.*, 302 F.R.D. 160, 165 (S.D. Ohio 2014).

The same is true here, as the settlement promotes compliance with both the TCPA and FDCPA.

**G. Plaintiff and his counsel have adequately represented the classes.**

Plaintiff was, throughout this matter, "committed to helping other people who also received autodialed calls from Convergent without permission, and [he] brought this case as a class action for that purpose." Doc. 46-3 at 4, ¶ 21. He "stay[ed] updated on the case and sp[oke] with [his] attorneys regularly, both on the telephone and by email." *Id*., ¶ 26. And Plaintiff remained "prepared to make all necessary decisions involving this case in the best interests of the class members that [he] seek[s] to represent." *Id*., ¶ 27.

Plaintiff's counsel is experienced in complex litigation and have served as class counsel on numerous occasions. *See* Exhibit A, at 2-4, ¶¶ 9-11. In this matter, Plaintiff's counsel zealously litigated on behalf of Plaintiff and the classes against sophisticated and experienced defense counsel, and obtained an excellent recovery for both Plaintiff and class members.

Plaintiff and his counsel have, therefore, adequately represented the classes.

**H. The settlement treats class members equitably.**

Rule 23(e)(2)(D) requires that a court confirm that a class action settlement treats all class members equitably. The Advisory Committee's Note to Rule 23(e)(2)(D) advises that courts should consider "whether the apportionment of relief

20

among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory committee's note (2018).

Here, class members have the same claims as other members of the respective classes. Correspondingly, the parties' settlement provides that each participating class member will receive an equal portion of the respective settlement funds. Additionally, the respective releases affect class members in the same way. As such, this factor supports preliminary approval. *See Hale v. State Farm Mutual Automobile Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079, at *5 (S.D. Ill. Dec. 16, 2018) ("This proposal is fair and equitable because the class members' interests in the Avery judgment were undivided when they were lost and, thus, each class member's damages were identical. The proposed Settlement therefore entitles each class member to an equal, pro-rata share of the Settlement fund.").

## III.   This Court should approve the parties' notice plan.

Pursuant to Rule 23(e), a court must, upon preliminary approval, "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. This notice must be the "best notice practicable," *see* Fed. R. Civ. P. 23(c)(2)(B), which means "individual notice to all members who can be

identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

Here, and after a competitive bid process, the parties agreed to a robust notice program to be administered by a well-respected third-party claims administrator, KCC. Through the notice program, KCC will use all reasonable efforts to provide direct mail notice to class members.

To start, using lists of telephone numbers that Defendant associates with class members—which Defendant produced to Plaintiff in discovery—KCC will coordinate with third-party vendors to perform reverse look-ups of the telephone numbers. This will result in names and addresses that KCC will then run through the National Change of Address system, which updates addresses for all people who moved during the previous four years and filed a change of address with the U.S. Postal Service. KCC will then send each person identified through this process, via U.S. mail, a postcard notice with a detachable claim form.

Separately, KCC will establish dedicated settlement websites—one for the TCPA class and one for the FDCPA class—through which class members can review relevant documents filed with this Court, review the summary question-and-answer notice, and submit claims. In addition, KCC will establish toll-free telephone numbers, through which class members can request additional information, have questions about the parties' settlement answered, and submit claims. Finally, KCC

will institute a publication notice program by advertising the settlement in USA Today.

To submit a valid claim, a TCPA class member will have to aver that he or she received one or more automated or artificial or prerecorded calls from Defendant on his or her cellular telephone between November 11, 2016 and February 25, 2019, and that he or she was not the person Defendant was trying to reach, or that he or she instructed Defendant to stop placing calls to his or her cellular telephone but received at least one additional call from Defendant. An FDCPA class member will have to aver that he or she received one or more calls from Defendant to his or her telephone between May 15, 2017 and February 25, 2019, after her or she instructed Defendant to stop placing calls to his or her telephone number.

The ultimate goal of the notice program will be to make it as convenient as possible for class members to learn of, and participate in, the settlement. *See Williams*, 2019 WL 1450090, at *5 (approving materially identical notice plan in wrong number TCPA class action); *James*, 2016 WL 6908118, at *2 (same).

The notice program, therefore, complies with Rule 23 and due process because, among other things, it informs class members, directly, of: (1) the nature of this action; (2) the essential terms of the parties' settlement, including the class definitions and claims asserted; (3) the binding effect of a judgment if a class member does not request exclusion; (4) the process regarding objections and

23

exclusions, including the time and method for objecting or requesting exclusion, and that settlement class members may make an appearance through counsel; (5) information regarding Plaintiff's incentive award and his counsel's request for an award of attorneys' fees, costs, and expenses; (6) the procedure for submitting claims to receive settlement benefits; and (7) how to make inquiries, and where to find additional information. Fed. R. Civ. P. 23(c)(2)(B); Manual For Complex Litigation § 21.312.

In short, the notice program ensures that class members' due process rights are amply protected, and, as a result, this Court should approve it. *See* Fed. R. Civ. P. 23(c)(2)(A).

## IV.    This Court should set a final fairness hearing.

The final step in the settlement approval process is a final fairness hearing, during which a court hears all evidence and argument necessary to finally evaluate the fairness of a settlement. Fed. R. Civ. P. 23(e)(2). After the final fairness hearing, the court then determines whether the settlement should be approved, and whether to enter a judgment and order of dismissal under Rule 23(e).

Here, the parties respectfully request that this Court set a date for a final approval hearing, at this Court's convenience, approximately four months after it preliminarily approves the parties' settlement.

**Conclusion**

Plaintiff respectfully requests that this Court enter the accompanying order granting preliminary approval of the settlement, conditionally certifying the TCPA and FDCPA classes, appointing Plaintiff as the representative of the classes, and appointing Plaintiff's counsel as counsel for the classes.

Date: June 27, 2019

/s/ Aaron D. Radbil
Aaron D. Radbil
Greenwald Davidson Radbil PLLC
401 Congress Avenue, Suite 1540
Austin, Texas 78701
Tel: (512) 803-1578
Fax: (561) 961-5684
aradbil@gdrlawfirm.com

Michael L. Greenwald
James L. Davidson
Alexander D. Kruzyk
7601 N. Federal Highway, Suite A-230
Boca Raton, Florida 33487
Tel: (561) 826-5477
Fax: (561) 961-5684
mgreenwald@gdrlawfirm.com
jdavidson@gdrlawfirm.com
akruzyk@gdrlawfirm.com

Andrew Campbell
Attorney at Law
1000 Beach Street, Suite B West Entrance
Flint, MI 48502
Phone: (810) 232-4344
michiganbk@gmail.com

Counsel for Plaintiff and the proposed
classes

25

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed electronically on June 27, 2019, via the Court Clerk's CM/ECF system, which will provide notice to all counsel of record.

*/s/ Aaron D. Radbil*
Aaron D. Radbil