UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| Michael Sheean, *on behalf of himself and others similarly situated*, | Case No: 2:18-cv-11532-GCS-RSW |
| Plaintiff, | Hon. George Caram Steeh |
| v. | Mag. Judge R. Steven Whalen |
| Convergent Outsourcing, Inc. | |
| Defendant. | |

**PLAINTIFF'S UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, EXPENSES, AND AN INCENTIVE AWARD**

With the assistance of an experienced and well-regarded mediator, Michael Sheean and Convergent Outsourcing, Inc. ("Defendant") agreed to resolve this matter for the benefit of two nationwide classes with claims, respectively, under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. This Court preliminarily approved the parties' settlement on July 8, 2019, ECF No. 59, and the parties disseminated Court-approved class notice on August 8, 2019.

More specifically, benefitting some 350,000 class members in total, Defendant agreed to create two non-reversionary common funds—one in the amount of $3.71 million to compensate TCPA Class members, and another in the amount of

1

$40,000 to compensate FDCPA Class members—from which class members who submit valid and timely claims will receive pro-rata payments.

For his counsel's efforts in obtaining these significant recoveries, Mr. Sheean now seeks an award of attorneys' fees equal to one-third of the combined common funds, or $1,250,000 in total, plus reimbursement of litigation costs and expenses totaling $13,337.49, as well as an incentive award in the amount of $5,000.

Pursuant to Local Rule 7.1(a), undersigned counsel conferred with counsel for Defendant regarding this motion, and Defendant does not oppose the relief requested.

Dated: August 23, 2019

*/s/ Aaron D. Radbil*
Aaron D. Radbil
Greenwald Davidson Radbil PLLC
401 Congress Avenue, Suite 1540
Austin, Texas 78701
Tel: (512) 803-1578
Fax: (561) 961-5684
aradbil@gdrlawfirm.com

Michael L. Greenwald
James L. Davidson
Alexander D. Kruzyk
Greenwald Davidson Radbil PLLC
7601 N. Federal Highway, Suite A-230
Boca Raton, Florida 33487
Tel: (561) 826-5477
Fax: (561) 961-5684
mgreenwald@gdrlawfirm.com
jdavidson@gdrlawfirm.com
akruzyk@gdrlawfirm.com

*Class Counsel*

Andrew Campbell
Attorney at Law
1000 Beach Street, Suite B West Entrance
Flint, MI 48502
Phone: (810) 232-4344
michiganbk@gmail.com

*Liaison Counsel*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed electronically on August 23, 2019, via the Court Clerk's CM/ECF system, which will provide notice to all counsel of record.

*/s/ Aaron D. Radbil*
Aaron D. Radbil

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| Michael Sheean, *on behalf of himself and others similarly situated*, | ) ) ) | Case No: 2:18-cv-11532-GCS-RSW |
| Plaintiff, | ) ) | Hon. George Caram Steeh |
| v. | ) ) | Mag. Judge R. Steven Whalen |
| Convergent Outsourcing, Inc. | ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

**BRIEF IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, EXPENSES, AND AN INCENTIVE AWARD**

# Table of Contents

Introduction ...........................................................................................................1

Argument...............................................................................................................1

  I.   This Court should approve Mr. Sheean's request for an award of attorneys' fees. ................................................................................................................1

     A.   Class counsel obtained excellent results for the classes, which surpass recoveries in analogous consumer protection settlements. ................................4

     B.   The questions underlying this matter were both difficult and novel. ......10

     C.   Class counsel undertook this litigation on a contingent basis, bearing considerable risk that they would not be paid for their efforts. .......................13

     D.   Class counsel devoted substantial resources to reach these excellent results. ...........................................................................................................15

     E.   Class counsel should be rewarded for their roles as private attorneys general serving a greater public good. ...........................................................17

     F.   Class counsel relied on specialized skill and experience in performing the legal services required, while facing highly experienced opposition. ..............20

     G.   Additional considerations further support class counsel's fee................21

  II.   This Court should approve an incentive award to Mr. Sheean in the amount of $5,000. ...............................................................................................22

  III.   This Court should approve class counsel's request for reimbursement of litigation costs and expenses. ...........................................................................23

Conclusion .........................................................................................................25

# Index of Authorities

## Cases

*ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687 (D.C. Cir. 2018) ..................11

*Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185 (S.D. Fla.    2006) ........................................................................................................................ 18, 19

*Am. Copper & Brass, Inc. v. Lake City Indus. Prod., Inc.*, No. 09-1162, 2016   WL 6272094 (W.D. Mich. Mar. 1, 2016).............................................................. *passim*

*Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*, No. 15-2460,  2016 WL 4766079 (E.D. Pa. Sept. 13, 2016)....................................................................8

*Bessey v. Packerland Plainwell, Inc.*, No. 06-95, 2007 WL 3173972 (W.D.   Mich. Oct. 26, 2007) ....................................................................................................10

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) .....................................................2

*Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345 (E.D.N.Y. 2006) ............................8

*Bowling v. Pfizer, Inc.*, 102 F.3d 777 (6th Cir. 1996) .................................... *passim*

*Brown v. Phillips Petroleum Co.*, 838 F.2d 451 (10th Cir. 1988)..........................15

*Carr v. Bob Evans Farms, Inc.*, No. 17-1875, 2018 WL 7508650 (N.D. Ohio   July 27, 2018)................................................................................................................21

*Columbus Drywall & Insulation, Inc.*, No. 04-3066, 2008 WL 11234103 (N.D. Ga. Mar. 4, 2008) .....................................................................................................13

*Cross v. Wells Fargo Bank, N.A.*, No. 15-cv-1270, 2016 WL 5109533 (N.D.    Ga. Sept. 13, 2016)........................................................................................................5

*Dallas v. Alcatel-Lucent USA, Inc.*, No. 09-14596, 2013 WL 2197624 (E.D.  Mich. May 20, 2013).....................................................................................................21

*Duke v. Bank of Am., N.A.*, No. 12-4009, ECF No. 51 (N.D. Cal.*)* ..........................6

*Evans v. Am. Power & Gas, LLC*, No. 17-515, 2019 WL 2205902 (S.D. Ohio  May 22, 2019)..............................................................................................................23

*Fournier v. PFS Invs., Inc.*, 997 F. Supp. 828 (E.D. Mich. 1998) ......................2, 3

*Frickco Inc. v. Novi BRS Enters., Inc.*, No. 10-10626, 2011 WL 2079704 (E.D. Mich. May 25, 2011) ...................................................................................13

*Gary v. TrueBlue, Inc.*, 346 F. Supp. 3d 1040 (E.D. Mich. 2018) .........................11

*Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215 (N.D. Ill. 2016).......................6

*Green v. Dressman Benzinger Lavelle, PSC*, No. 14-142, 2015 WL 223764   (S.D. Ohio Jan. 16, 2015).......................................................................................8

*Hadix v. Johnson*, 322 F.3d 895 (6th Cir. 2003) .....................................................22

*Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935 (D. Minn. 2016)...............6

*In re Auto. Parts Antitrust Litig.*, No. 12-2311, 2018 WL 7108072 (E.D. Mich. Nov. 5, 2018) ...................................................................................................3, 10

*In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781 (N.D.    Ill. 2015) ...................................................................................................................6

*In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297 (N.D. Ga. 1993) .........4

*In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366 (S.D.  Ohio 1990) ...............................................................................................................3

*In re Packaged Ice Antitrust Litig.*, No. 08-1952, 2011 WL 6209188 (E.D.   Mich. Dec. 13, 2011) .............................................................................................10

*In re Prandin Direct Purchaser Antitrust Litig.*, No. 10-12141, 2015 WL  1396473 (E.D. Mich. Jan. 20, 2015) .................................................... 10, 15, 21

*In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491 (W.D. Pa. 2003).........................24

*In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 12-83, 2014 WL 2946459   (E.D. Tenn. June 30, 2014) ...................................................................................21

*In Re: Convergent Telephone Consumer Protection Act Litig.*, No. 13-2478,   ECF No. 233 (D. Conn. Apr. 5, 2016).................................................................12

*Jackson's Five Star Catering, Inc. v. Beason*, No. 10-10010, ECF No. 90 (E.D. Mich. Apr. 15, 2015) .............................................................................................23

*James v. JPMorgan Chase Bank, N.A.*, No. 15-2424, 2016 WL 6908118 (M.D. Fla. Nov. 22, 2016)...................................................................................................5

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, No. 06-1397, 2011  WL 1434679 (N.D. Ohio 2011) ...................................................................................9

*Keyes v. Ocwen Loan Servicing, LLC*, 335 F. Supp. 3d 951 (E.D. Mich. 2018) ....11

*Kolinek v. Walgreen Co.*, 311 F.R.D. 483 (N.D. Ill. 2015) .....................................6

*Little-King v. Hayt & Landau*, No. 11-5621, 2013 WL 4874349 (D.N.J. Sept.  10, 2013) ........................................................................................................................8

*Luster v. Wells Fargo Dealer Servs., Inc.*, No. 15-1058, ECF No. 60 (N.D. Ga. Feb. 23, 2017) .........................................................................................................5

*Markos v. Wells Fargo Bank, N.A.*, No. 15-1156, 2016 WL 4708028 (N.D. Ga. Sept. 7, 2016) ......................................................................................................5, 7

*Martin v. Trott Law, P.C.*, No. 15-12838, 2018 WL 4679626 (E.D. Mich.   Sept. 28, 2018) .................................................................................... 9, 14, 21

*Mees v. Skreened, Ltd.*, No. 14-142, 2016 WL 67521 (S.D. Ohio Jan. 6,   2016) .3, 4, 19

*Osman v. Grube, Inc.*, No. 16-802, 2018 WL 2095172 (N.D. Ohio May 4,   2018) ...........................................................................................................................21

*Picchi v. World Fin. Network Bank*, No. 11-61797 (S.D. Fla. Jan. 30, 2015) ..........5

*Prather v. Wells Fargo Bank, N.A.*, No. 15-4231, 2017 WL 770132 (N.D. Ga.  Feb. 24, 2017) .................................................................................................................5

*Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513 (6th Cir. 1993) ...................2

*Rose v. Bank of Am. Corp.*, Nos. 11-2390, 12-4009, 2014 WL 4273358 (N.D.  Cal. Aug. 29, 2014) ...................................................................................................6

*Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, No. 13-2085, 2016 WL 75535 (N.D. Ohio Jan 7. 2016) ..................................................... 13, 23

*Sawyer v. KRS Biotech., Inc.*, No. 16-550, 2018 WL 2425780 (S.D. Ohio May 30, 2018) .......................................................................................................................12

*Schell v. Frederick J. Hanna & Assocs., P.C.*, No. 15-418, 2016 WL 1273297 (S.D. Ohio Mar. 31, 2016) .......................................................................................8

*Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673 (N.D. Cal. 2016) .......9

*Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442 (N.D. Ohio 2012)...................................................................................................7

*Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*, No. 11-1074, ECF No. 84 (N.D. Ohio Dec. 3, 2012) ...................................................................23

*Simpson v. Citizens Bank*, Nos. 12-10267, 12-11604, 2014 WL 12738263   (E.D. Mich. Jan. 31, 2014) ............................................................... *passim*

*Spine & Sports Chiropractic, Inc. v. ZirMed, Inc.*, No. 13-489, 2015 WL  9413143 (W.D. Ky. Dec. 22, 2015) .......................................................... 21, 23

*Steinfeld v. Discover Fin. Servs.*, No. 12-cv-1118, 2014 WL 1309352 (N.D. Cal. Mar. 31, 2014) ...................................................................................7

*Stinson v. Delta Mgmt. Assocs., Inc.*, 302 F.R.D. 160 (S.D. Ohio 2014)...............18

*Todd S. Elwert DC, Inc. v. Alliance Healthcare Servs., Inc.*, No. 15-2673, 2018 WL 4539287 (N.D. Ohio Sept. 21, 2018) .................................................. *passim*

*Whitford v. Weber & Olcese, P.L.C.*, No. 15-cv-400, 2016 WL 122393 (W.D. Mich. Jan. 11, 2016) ...............................................................................8

*Wilkins v. HSBC Bank Nev., N.A.*, No. 14-190, 2015 WL 890566 (N.D. Ill.   Feb. 27, 2015) .................................................................................................6

*Williams v. Bluestem Brands, Inc.*, No. 17-1971, 2019 WL 1450090 (M.D.   Fla. Apr. 2, 2019)..............................................................................................5, 20

*Wright v. Nationstar Mortage LLC*, No. 14 C 10457, 2016 WL 4505169 (N.D.  Ill. Aug. 29, 2016) ..............................................................................................6

## Statutes

15 U.S.C. § 1692k.........................................................................................9

## Statement of the Issues Presented

Whether this Court should (1) approve as reasonable Mr. Sheean's request for attorneys' fees in the amount of $1,250,000, which is equal to one-third of the settlement common funds obtained for the classes, (2) reimburse class counsel a total of $13,337.49 for litigation costs and expenses they reasonably incurred in this litigation, and (3) award Mr. Sheean $5,000 for his service to the classes.

## Compelling/Most Appropriate Authorities

1. *Bowling v. Pfizer, Inc.*, 102 F.3d 777 (6th Cir. 1996)

2. *Todd S. Elwert DC, Inc. v. Alliance Healthcare Servs., Inc.*, No. 15-2673, 2018 WL 4539287 (N.D. Ohio Sept. 21, 2018)

3. *Am. Copper & Brass, Inc. v. Lake City Indus. Prod., Inc.*, No. 09-1162, 2016 WL 6272094 (W.D. Mich. Mar. 1, 2016)

4. *Simpson v. Citizens Bank*, Nos. 12-10267, 12-11604, 2014 WL 12738263 (E.D. Mich. Jan. 31, 2014)

## Introduction

Having secured a class settlement through which Defendant agreed to pay a total of $3.75 million for the benefit of more than 350,000 consumers nationwide, Mr. Sheean seeks an award of attorneys' fees of $1,250,000—*i.e.*, one-third of the combined common funds—plus reimbursement of class counsel's reasonable litigation costs and expenses in the amount of $13,337.49, and an incentive award of $5,000 for Mr. Sheean's services to both settlement classes. Class counsel's requests are reasonable, justified, and in line with awards approved in analogous TCPA class actions in this district. Moreover, following notice to class members, to date, not one has objected to any part of the settlement or to the requests for attorneys' fees, costs, expenses, and an incentive award.[1] This Court should therefore approve the requests in their entirety. Significantly, Defendant does not oppose these awards.

## Argument

### I.   This Court should approve Mr. Sheean's request for an award of attorneys' fees.

The Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his

---

[1]   The class notices specifically informed class members that class counsel would seek an award of attorneys' fees in an amount up to one-third of the combined settlement common funds, and reimbursement of litigation costs and expenses not to exceed $17,500 in total. The notices also stated that Mr. Sheean would seek an incentive award of $5,000. The deadline for objections is September 23, 2019.

client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).[2] In the context of class actions like this, district courts within the Sixth Circuit typically award attorneys' fees as a percentage of the common funds obtained for class members. That is, "[r]ather than the court's ascertaining a 'reasonable fee,' the attorney receives a percentage of the fund awarded to the class." *Fournier v. PFS Invs., Inc.*, 997 F. Supp. 828, 832 (E.D. Mich. 1998) (Gilmore, J., adopting report and recommendation of Morgan, M.J.).[3]

Using "[t]he percentage of the fund method has a number of advantages; it is easy to calculate; it establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery; and it encourages early settlement, which avoids protracted litigation." *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). The percentage of the fund method thus "is preferred in this district because it eliminates disputes about the reasonableness of rates and hours, conserves judicial resources, and aligns the interests of class counsel and the class

---

[2]     Internal citations and quotations are omitted, and emphasis is added, unless otherwise noted.

[3]     As Judge Morgan recognized in *Fournier*, the alternative "lodestar method should arguably be avoided in situations where [] a common fund exists because it does not adequately acknowledge (1) the result achieved or (2) the special skill of the attorney(s) in obtaining that result. Courts and commentators have been skeptical of applying the [lodestar] formula in common fund cases." 997 F. Supp. at 831-32 (citing cases). "For these reasons, many courts have strayed from using lodestar in common fund cases and moved towards the percentage of the fund method which allows for a more accurate approximation of a reasonable award for fees." *Id.* at 832.

members." *In re Auto. Parts Antitrust Litig.*, No. 12-2311, 2018 WL 7108072, at *1 (E.D. Mich. Nov. 5, 2018) (Battani, J.); *accord Todd S. Elwert DC, Inc. v. Alliance Healthcare Servs., Inc.*, No. 15-2673, 2018 WL 4539287, at *4 (N.D. Ohio Sept. 21, 2018) ("This Court adopts the percentage of the fund method to determine reasonable attorneys' fees here as it is the preferred method in the Sixth Circuit for common fund cases and because it most accurately reflects the results achieved in a case.").

"[M]any courts within the Sixth Circuit have accepted [the percentage of the fund] method for calculating the award of attorneys' fees, with the percentage typically ranging from 20 to 50 percent of the fund." *Mees v. Skreened, Ltd.*, No. 14-142, 2016 WL 67521, at *5 (S.D. Ohio Jan. 6, 2016); *see also In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 372 (S.D. Ohio 1990) (same).

Here, class counsel requests an award of attorneys' fees equal to one-third of the total common funds. Important, then, is that while approval of "[t]he specific percentage is left to the court's discretion," *Fournier*, 997 F. Supp. at 832, the Sixth Circuit established six factors to consider for an award's reasonableness: (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the

professional skill and standing of counsel involved on both sides. *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996).

Individually, and together, these *Bowling* factors strongly support class counsel's request here.

## A. Class counsel obtained excellent results for the classes, which surpass recoveries in analogous consumer protection settlements.

First and foremost, "[t]he value of the benefit rendered to the plaintiff class is among the most important factors to be considered." *Mees*, 2016 WL 67521, at *5; *see also In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 351 (N.D. Ga. 1993) ("The most important element in determining the appropriate fee to be awarded class counsel out of a common fund is the result obtained for the class through the efforts of such counsel.").

Here, in the face of significant legal hurdles, *see infra* Argument, Section I.B, class counsel obtained excellent results for over 350,000 class members. From the outset, the non-reversionary cash settlement funds are noteworthy in and of themselves, especially considering the changing legal landscape in which class counsel litigated this matter. *See id.*

In particular, the TCPA portion of the settlement compares very favorably on a per-class member basis (calculated by dividing the total settlement fund by the number of potential class members) to similar TCPA class action settlements recently approved. Indeed, dividing the TCPA Class common fund ($3.71 million)

by 350,732 (the approximate number of TCPA Class members who likely received wrong-number calls from Defendant) amounts to about $10.58 per person.

In comparison, in *Picchi v. World Fin. Network Bank*, No. 11-61797 (S.D. Fla. Jan. 30, 2015), the Southern District of Florida granted final approval to a similar wrong-number TCPA class settlement for just $2.63 per person (settling claims of 3 million class members for $7.9 million). Numerous other approved TCPA class action settlements fall in a similar range. *See, e.g.*, *Williams v. Bluestem Brands, Inc.*, No. 17-1971, 2019 WL 1450090, at *2 (M.D. Fla. Apr. 2, 2019) (preliminary approval of wrong-number TCPA class action settlement amounting to approximately $7 per class member); *James v. JPMorgan Chase Bank, N.A.*, No. 15-2424, 2016 WL 6908118, at *1 (M.D. Fla. Nov. 22, 2016) ($5.55 per class member); *Prather v. Wells Fargo Bank, N.A.*, No. 15-4231, 2017 WL 770132 (N.D. Ga. Feb. 24, 2017) ($4.65 per class member, finally approved at ECF No. 55); *Luster v. Wells Fargo Dealer Servs., Inc.*, No. 15-1058, ECF No. 60 (N.D. Ga. Feb. 23, 2017) ($4.65 per class member); *Cross v. Wells Fargo Bank, N.A.*, No. 15-cv-1270, 2016 WL 5109533 (N.D. Ga. Sept. 13, 2016) ($4.75 per class member, finally approved at ECF No. 103); *Markos v. Wells Fargo Bank, N.A.*, No. 15-1156, 2016 WL 4708028 (N.D. Ga. Sept. 7, 2016) ($4.95 per class member, finally approved at ECF No. 90); *Wilkins v. HSBC Bank Nev., N.A.*, No. 14-190, 2015 WL 890566 (N.D.

Ill. Feb. 27, 2015) ($4.41 per class member); *Duke v. Bank of Am., N.A.*, No. 12-4009, ECF No. 51 (N.D. Cal.) ($4.15 per class member, approved at ECF No. 59).

Also important, class counsel estimate—based on historical claims rates—that after deducting the requested attorneys' fees, litigation costs and expenses, costs of notice and claims administration, and the requested incentive award to Mr. Sheean, participating TCPA Class members who submit valid claims will receive between $40 and $120 each—a figure toward the top end of the spectrum of TCPA class settlements. *See, e.g.*, *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) ($52.50 per claiming class member); *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 947 (D. Minn. 2016) ($33.20 per claimant); *Wright v. Nationstar Mortg. LLC*, No. 14-10457, 2016 WL 4505169, at *8 (N.D. Ill. Aug. 29, 2016) (approximately $45 per claimant); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (finding that $34.60 per person falls "within the range of recoveries" in a TCPA class action); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) (noting that "thirty dollars per claimant 'falls on the lower end of the scale,' it is nonetheless 'within the range of recoveries' in TCPA class actions"); *Rose v. Bank of Am. Corp.*, Nos. 11-2390, 12-4009, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (claimants received between $20 and $40 each); *Steinfeld v. Discover Fin. Servs.*, No. 12-1118, 2014 WL 1309352

(N.D. Cal. Mar. 31, 2014) (approving settlement that ultimately distributed less than $50 per claimant, ECF No. 101).

And TCPA Class members stand to gain as much as $120 each despite the purely statutory damages at issue—damages that courts have deemed too small to incentivize individual actions. *See, e.g.*, *Todd S. Elwert DC, Inc.*, 2018 WL 4539287, at *4 ("Class counsel secured a substantial benefit for class members. The [TCPA] does not provide for attorneys' fees, so individual claimants generally must proceed *pro se*. As such, many class members might not have pursued an individual suit."); *Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442, 446 (N.D. Ohio 2012) (stating that since each class member is unlikely to recover more than a small amount, they are unlikely to bring individual suits under the TCPA). This means that because of the settlement at hand, consumers will receive significant cash relief they otherwise likely would never have pursued on their own.

At bottom, the TCPA-specific portion of the settlement constitutes an excellent result for class members, and amply supports the attorneys' fee award requested here. *Accord Markos v. Wells Fargo Bank, N.A.*, No. 15-1156, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) (finding cash recovery of $24 per claimant in a TCPA class action—well below the expected recovery here—is "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter").

The same is true for the FDCPA Class. Dividing the applicable common fund ($40,000) by the number of FDCPA Class members (481) results in a per-class member recovery of just over $83. In relation to other recent FDCPA class settlements, this represents a fantastic result for class members. *See, e.g.*, *Schell v. Frederick J. Hanna & Assocs., P.C.*, No. 15-418, 2016 WL 1273297, at *3 (S.D. Ohio Mar. 31, 2016) ($10 per class member); *Whitford v. Weber & Olcese, P.L.C.*, No. 15-cv-400, 2016 WL 122393, at *2 (W.D. Mich. Jan. 11, 2016) (same); *Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*, No. 15-2460, 2016 WL 4766079, at *3 (E.D. Pa. Sept. 13, 2016) ($10.92 per class member); *Green v. Dressman Benzinger Lavelle, PSC*, No. 14-142, 2015 WL 223764, at *3 (S.D. Ohio Jan. 16, 2015) (approximately $31 per class member); *Little-King v. Hayt & Landau*, No. 11-5621, 2013 WL 4874349, at *14 (D.N.J. Sept. 10, 2013) ($7.87 per class member); *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 355 (E.D.N.Y. 2006) ($7.32 per class member).

Also worth mentioning, Defendant argued that its bona fide error defense would eliminate any potential liability under the FDCPA. Plus, even assuming Mr. Sheean would have prevailed on his FDCPA claims despite Defendant's anticipated defense, there still was no guarantee of a full class statutory damages recovery at trial because the FDCPA's damages provision is permissive rather than mandatory. The statute provides for statutory damages awards *up to* certain amounts—$1,000

for Mr. Sheean, and the lesser of $500,000 or one percent of Defendant's net worth for the class—after balancing such factors as the nature of Defendant's noncompliance, the number of persons adversely affected, and the extent to which Defendant's noncompliance was intentional. *See* 15 U.S.C. § 1692k(b)(2).

Accordingly, even assuming a trial verdict in the FDCPA Class's favor, a jury may have awarded little in the way of statutory damages, or even none at all. *See Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 683 (N.D. Cal. 2016) ("Because damages are not mandatory, continued litigation presents a risk to Plaintiffs of expending time and money on this case with the possibility of no recovery at all for the Class. In light of the risks and costs of continued litigation, the immediate reward to Class Members is preferable."); *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, No. 06-1397, 2011 WL 1434679, at *11 (N.D. Ohio 2011) (analyzing the factors set forth in 15 U.S.C. § 1692k and awarding no "additional damages" to members of the class).

Against this backdrop, the value of the results obtained—both for the TCPA Class and the FDCPA Class—weigh heavily in favor of class counsel's fee award request, particularly in light of similar fee awards approved in this district. *See, e.g.*, *Martin v. Trott Law, P.C.*, No. 15-12838, 2018 WL 4679626, at *9 (E.D. Mich. Sept. 28, 2018) (Lawson, J.) (finding "33-1/3% is both a reasonable and appropriate attorneys' share of the common fund in this case, especially in light of the

representation by class counsel," and noting that "[t]he value of the benefit rendered by plaintiffs' counsel is substantial and evidently will result in payments of around $82 to more than 54,000 class members"); *In re Prandin Direct Purchaser Antitrust Litig.*, No. 10-12141, 2015 WL 1396473, at *4 (E.D. Mich. Jan. 20, 2015) (Cohn, J.) (in $19 million settlement, finding "the requested counsel fee of one-third of the settlement fund is fair and reasonable and fully justified," and "is within the range of fee awards in settlements of this type"); *Simpson v. Citizens Bank*, Nos. 12-10267, 12-11604, 2014 WL 12738263, at *6 (E.D. Mich. Jan. 31, 2014) (Hood, J.) ("Class Counsel's request for 33% of the common fund created by their efforts is well within the benchmark range and in line with what is often awarded in this Circuit.").[4]

## B. The questions underlying this matter were both difficult and novel.

Obtaining the results at bar took careful, strategic work on the part of class counsel considering the complexity of the litigation—the fifth *Bowling* factor. This action involved many legal questions, most of which were difficult, and several of

---

[4]   *See also In re Auto. Parts Antitrust Litig.*, 2018 WL 7108072, at *1 (awarding 30% fee and collecting cases approving similar distributions); *In re Packaged Ice Antitrust Litig.*, No. 08-1952, 2011 WL 6209188, at *19 (E.D. Mich. Dec. 13, 2011) (Borman, J.) ("[T]he requested award of close to 30% appears to be a fairly well-accepted ratio in cases of this type and generally in complex class actions."); *accord Bessey v. Packerland Plainwell, Inc.*, No. 06-95, 2007 WL 3173972, at *4 (W.D. Mich. Oct. 26, 2007) (awarding one-third of settlement fund as attorneys' fees and expenses, and noting that "[e]mpirical studies show that, regardless whether the percentage method or the lodestar method is used fee awards in class actions average around one-third of the recovery").

which were novel. Indeed, Defendant advanced a host of arguments that the value of class members' claims should be severely discounted, if not eliminated entirely.

For example, Defendant contended that the telephone system it used to make the calls at issue was not an automatic telephone dialing system within the scope of the TCPA, thus calling into question the merits of Mr. Sheean and the TCPA Class's claims. If this Court agreed with Defendant's position, TCPA Class members' claims necessarily would fail. *See, e.g.*, *Gary v. TrueBlue, Inc.*, 346 F. Supp. 3d 1040, 1044 (E.D. Mich. 2018) (Drain, J.) (granting defendant's motion for summary judgment, in part because the dialer at issue did not "ha[ve] the capacity to randomly or sequentially dial"); *Keyes v. Ocwen Loan Servicing, LLC*, 335 F. Supp. 3d 951, 963 (E.D. Mich. 2018) (Drain, J.) (same).

Separately, the Federal Communications Commission's July 10, 2015 Declaratory Ruling and Order ("2015 FCC Order") included a one-call safe harbor for calls made to reassigned cellular telephone numbers, like those at issue here. While the D.C. Circuit Court of Appeals invalidated that portion of the 2015 FCC Order in *ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687 (D.C. Cir. 2018), it directed the FCC to reconsider whether and, if so, how, callers like Defendant can reasonably rely on consent given by prior subscribers. Should the FCC institute an expansive, backward-looking safe harbor, Defendant may have a viable defense to many of the calls at issue.

Defendant also contended that it maintains safeguards to ensure compliance with the TCPA. While it vehemently disputed any liability, to the extent any violations did occur, Defendant would argue that any violation of the TCPA was unintentional and would not support increased statutory damages.

Moreover, Mr. Sheean faced significant risks in obtaining class certification. Counsel in a previous TCPA class action against Defendant summarized the issues Plaintiff potentially faced in this regard:

> Class Plaintiffs and their counsel knew that going forward there was a significant risk that the Court would decline to certify this case as a class action. A central issue in this case is whether Convergent possessed the prior express consent of class members it called using an automated telephone dialing system. Courts have offered differing opinions in other cases under the TCPA regarding whether questions of consent require an individualized inquiry and thus denied class certification, though the majority appear to deny class certification on the consent issue.

*In Re: Convergent Telephone Consumer Protection Act Litig.*, No. 13-2478, ECF No. 233 at 19-20 (D. Conn. Apr. 5, 2016).[5]

And to that point, several courts within this Circuit have refused to certify TCPA class actions, making the likelihood of certification over objection all the more uncertain. *See, e.g.*, *Sawyer v. KRS Biotech., Inc.*, No. 16-550, 2018 WL 2425780 (S.D. Ohio May 30, 2018); *Sandusky Wellness Ctr., LLC v. ASD Specialty*

---

[5]     While Plaintiff believes that Defendant waived any defense based on prior express consent, Defendant's position is that such a defense remains available to it.

*Healthcare, Inc.*, No. 13-2085, 2016 WL 75535 (N.D. Ohio Jan 7. 2016); *Frickco Inc. v. Novi BRS Enters., Inc.*, No. 10-10626, 2011 WL 2079704 (E.D. Mich. May 25, 2011) (Zatkoff, J.).

In sum, many of the issues underlying this matter involve difficult and unsettled legal questions, which are at the forefront of class action, constitutional, and consumer protection law, further underscoring the value of the services provided by class counsel in obtaining such substantial, guaranteed, and immediate recoveries for class members. The fifth *Bowling* factor is thus strongly supportive of class counsel's instant request.

### C. Class counsel undertook this litigation on a contingent basis, bearing considerable risk that they would not be paid for their efforts.

Next, "[n]umerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award." *Columbus Drywall & Insulation, Inc.*, No. 04-3066, 2008 WL 11234103, at *3 (N.D. Ga. Mar. 4, 2008). This is, in part, because even in ordinary cases, "uncertain is the outcome," *id.*, and the corresponding risk taken by counsel in connection with contingent fee arrangements—no assurance of payment—warrants a higher percentage of the fund. *Id.*

The Northern District of Ohio recently approved a one-third attorneys' fee award based in part on the contingent nature of class counsel's fee arrangement: "Counsel undertaking the action on a contingent fee basis also supports awarding

their requested attorneys' fees. Counsel accepted the action on a contingent fee basis with the risk that they would receive no repayment. Counsel has not received any compensation to date." *Todd S. Elwert DC, Inc.*, 2018 WL 4539287, at *4; *see also Am. Copper & Brass, Inc. v. Lake City Indus. Prod., Inc.*, No. 09-1162, 2016 WL 6272094, at *3 (W.D. Mich. Mar. 1, 2016) (same).

Moreover, Judge Hood recognized:

> In undertaking to prosecute this complex case entirely on a contingent fee basis, Class Counsel assumed a significant risk of nonpayment or underpayment. That risk warrants an appropriate fee. The risks are inherent in financing and prosecuting complex litigation of this type, but Class Counsel undertook representation with the knowledge that they would have to spend substantial time and money and face significant risks without any assurance of being compensated for their efforts. Only the most experienced plaintiffs' litigation firms would risk the time and expense involved in bringing this Action in light of the possibility of a recovery at an uncertain date, or of no recovery at all.

*Simpson*, 2014 WL 12738263, at *7.

Here, Mr. Sheean entered into a contingent attorneys' fee agreement with his counsel, *see* Declaration of Aaron D. Radbil, attached as Exhibit A, ¶ 8, which permitted class counsel to apply for an award of attorneys' fees in the event that a common fund was established for the benefit of the class. Such risk of non-payment, combined with counsel's dedicated efforts over the course of the last fifteen months, properly supports the 33.33% fee award requested. *See, e.g.*, *Martin*, 2018 WL 4679626, at *9 (awarding a one-third fee, in part, because "[c]lass counsel was retained on a contingent basis and assumed the risk of advancing substantial costs

14

and expenses of the litigation throughout its tortuous course, particularly with respect to the herculean efforts of the parties during the electronic discovery process.").

### D. Class counsel devoted substantial resources to reach these excellent results.

Returning to the second *Bowling* factor, although the time and labor required "is an essential touchstone for recovery in a statutory fee case where reasonableness is measured in part by reference to the lodestar analysis," *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 456 (10th Cir. 1988), in a common fund case like here, "the amount involved . . . and the results obtained may be given greater weight when, as in this case, the trial judge determines that the recovery was highly contingent and that the efforts of counsel were instrumental in realizing recovery on behalf of the class." *Id*. In other words, class counsel's time and labor "need not be evaluated using the lodestar formulation when, in the judgment of the trial court, a reasonable fee is derived by giving greater weight to other factors, the basis of which is clearly reflected in the record." *Id*.; *accord In re Prandin Direct Purchaser Antitrust Litig.*, 2015 WL 1396473, at *5 (observing that "the quality of work performed in a case that settles before trial is best measured by the benefit obtained").

Nonetheless, class counsel have spent significant time on this matter for well over a year. This case involved repeated motion practice, written discovery,

depositions, expert discovery, and formal mediation before the parties reached a settlement. *See* Ex. A, ¶¶ 42-63, 79.

More specifically, class counsel expended substantial efforts to reach this stage of the proceeding, which include: (a) conducting an investigation into the underlying facts regarding Mr. Sheean's claims and class members' claims; (b) preparing a class action complaint; (c) researching the law pertinent to class members' claims and Defendant's defenses; (d) preparing and serving initial written discovery requests to Defendant; (e) researching and preparing Mr. Sheean's motion to compel Defendant's answers to such requests; (f) preparing for and attending a hearing before the Court concerning Mr. Sheean's motion to compel; (g) researching and preparing two motions for an order to show cause regarding Defendant's noncompliance with this Court's order compelling Defendant's answers to written discovery; (h) researching and preparing Mr. Sheean's motion for class certification and appointment of class counsel under Rule 23; (i) preparing for and taking the corporate representative deposition of Defendant pursuant to Rule 30(b)(6); (j) preparing Mr. Sheean's witness list; (k) hiring an expert witness and facilitating the expert witness's report; (l) pursuing third-party discovery through subpoenas; (m) researching and opposing Defendant's motion for an extension of time and leave to conduct limited expert rebuttal discovery; (n) preparing for and attending a hearing before the Court concerning Defendant's motion to conduct limited additional expert

16

discovery; (o) preparing for and attending mediation in Philadelphia before the Hon. Diane Welsh (Ret.), including preparing a detailed mediation statement; (p) preparing the parties' class action settlement agreement, along with the proposed class notices and claim forms; (q) negotiating with class administration companies to secure the best notice plan practicable; (r) researching and preparing Mr. Sheean's motion for preliminary approval of the class action settlement, and counsel's detailed declaration in support; (s) researching and preparing Mr. Sheean's motion for final approval of the class action settlement; (t) preparing the instant unopposed motion for approval of an award of attorneys' fees, reimbursement of litigation costs and expenses, and an incentive award for Mr. Sheean; (u) preparing a detailed declaration in support of settlement approval and the requested fee and incentive awards; (v) conferring with the claims administrator to oversee the notice, claims, and administration process; (w) repeatedly conferring with Mr. Sheean throughout this case; and (x) conferring with class members to answer questions about the settlement process. *Id.*, ¶ 79. Class counsel's time and labor were therefore significant, and support the requested attorneys' fee award.

### E. Class counsel should be rewarded for their roles as private attorneys general serving a greater public good.

Moving to the fourth *Bowling* factor, "[a]ttorneys who undertake the risk to vindicate legal rights that may otherwise go unredressed function as 'private attorneys general.'" *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185,

17

1217 (S.D. Fla. 2006). Their role as such merits significant weight in evaluating proper compensation for class counsel in consumer protection actions like this.

This is particularly important here, where, as previously noted, *see supra* Argument, Section I.A, damages awards under the TCPA—a statute that does not include a fee-shifting provision—are often too small to incentivize individual actions. That is, "[a]warding attorneys' fees in [TCPA] class actions benefits society by encouraging attorneys to pursue [TCPA] claims through class actions. As mentioned multiple times, class actions are arguably the only effective way to enforce the [TCPA] as individual suits are unlikely." *Todd S. Elwert DC, Inc.*, 2018 WL 4539287, at *4.

Likewise for the FDCPA:

The settlement also serves the public interest because it promotes compliance with the FDCPA, which Congress enacted in order to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses. 15 U.S.C. § 1692(e).

*Stinson v. Delta Mgmt. Assocs., Inc.*, 302 F.R.D. 160, 165 (S.D. Ohio 2014).

Indeed, it is awards of the type requested here "that maintain an incentive for lawyers, like Class Counsel, to take on cases, wholly on contingency, prosecuting them for years, all the while never knowing whether they will in the end recoup substantial investment of dollars of time and costs invested in the case." *Simpson*,

2014 WL 12738263, at *7 (approving 33% fee award). And "[s]ociety has an interest in adequately compensating counsel who take on such risks to ensure that classes will be able to find representation." *Id.*

Moreover, the public policy fostered by the private attorney general role is frustrated where a defendant has the ability to overwhelm, for example, the small-firm plaintiff lawyers who typically represent consumers in actions under the TCPA. This is a reality that results from the fact that, as noted above, *see supra* Argument, Section I.C, class counsel were required to risk a significant amount of time, over the course of more than a year, as well as thousands of dollars in out-of-pocket costs and expenses, to reach the results obtained here. And "[u]nless that risk is compensated with a commensurate reward, few firms, no matter how large or well financed, will have any incentive to represent the small stake holders in class actions against corporate America, no matter how worthy the cause or wrongful the defendant's conduct." *Allapattah Servs., Inc.*, 454 F. Supp. 2d at 1217.

With this in mind, and considering (1) the lack of incentive for consumers to bring individual suits like this one, and (2) that Defendant here employs excellent legal counsel, class counsel's request for attorneys' fees is wholly supported by the economics involved in litigating this matter. *See Am. Copper & Brass, Inc.*, 2016 WL 6272094, at *3 ("society has an interest in compensating attorneys who obtain awards in high-risk, contingent cases"); *Mees*, 2016 WL 67521, at *6 ("adequate

compensatory fee awards in successful class actions promote private enforcement of and compliance with important areas of federal law").

### F. Class counsel relied on specialized skill and experience in performing the legal services required, while facing highly experienced opposition.

As to the sixth factor, "[i]n any given case, the skill of legal counsel should be commensurate with the novelty and complexity of the issues, as well as the skill of the opposing counsel." *Simpson*, 2014 WL 12738263, at *7. "Litigation of this Action required counsel highly trained in class action law and procedure as well as the specialized issues presented here." *Id.* Indeed,

> [t]he record demonstrates that th[is] Action involved a broad range of complex and novel challenges, which Class Counsel met at every juncture. Class Counsel is highly experienced in this particular area of [TCPA] litigation, having litigated and settled many [TCPA] class actions . . . in several other [] federal courts throughout the country. Class Counsel used the extensive knowledge and experience obtained from those cases and applied it to the instant Action in order to achieve a fair and reasonable settlement, at an early juncture, for the Settlement Class Members.

*Id.*; *see also* Ex. A, ¶¶ 10-41 (summarizing class counsel's extensive history with TCPA and FDCPA class litigation).

Correspondingly, class counsel's substantial experience and skill support the requested fee award. *Williams*, 2019 WL 1450090, at *4 ("Greenwald Davidson Radbil PLLC has extensive experience representing plaintiffs in class actions.").

### G. Additional considerations further support class counsel's fee.

Lastly, though not specifically enumerated in *Bowling*, it is worth noting (1) that Defendant does not oppose any of the awards sought here, and (2) "that counsel's request for one-third of the fund[s] is an amount frequently awarded by district courts in the Sixth Circuit," and thus is well in line with applicable precedent for litigation of this type. *Todd S. Elwert DC, Inc.*, 2018 WL 4539287, at \*5 (approving attorneys' fees of one-third of settlement fund in TCPA action).

In the past six years alone, a significant number of courts in this Circuit have so approved a one-third fee request in complex class action litigation. *See, e.g.*, *id.*; *Martin*, 2018 WL 4679626, at \*9; *Carr v. Bob Evans Farms, Inc.*, No. 17-1875, 2018 WL 7508650, at \*5 (N.D. Ohio July 27, 2018); *Osman v. Grube, Inc.*, No. 16-802, 2018 WL 2095172, at \*5 (N.D. Ohio May 4, 2018); *Am. Copper & Brass, Inc.*, 2016 WL 6272094, at \*3; *Spine & Sports Chiropractic, Inc. v. ZirMed, Inc.*, No. 13-489, 2015 WL 9413143, at \*1 (W.D. Ky. Dec. 22, 2015); *In re Prandin Direct Purchaser Antitrust Litig.*, 2015 WL 1396473, at \*5; *In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 12-83, 2014 WL 2946459, at \*1 (E.D. Tenn. June 30, 2014); *Simpson*, 2014 WL 12738263, at \*8; *Dallas v. Alcatel-Lucent USA, Inc.*, No. 09-14596, 2013 WL 2197624, at \*12 (E.D. Mich. May 20, 2013) (Edmunds, J.). Class counsel's request here is accordingly reasonable, and this Court should approve it.

**II.    This Court should approve an incentive award to Mr. Sheean in the amount of $5,000.**

"Incentive awards are 'efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class.'" *Am. Copper & Brass, Inc.*, 2016 WL 6272094, at *2 (quoting *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)). Such awards are "usually viewed as extensions of the common-fund doctrine, a doctrine that holds that a litigant who recovers a common fund for the benefit of persons other than himself is entitled to recover some of his litigation expenses from the fund as a whole." *Hadix*, 322 F.3d at 898. "Thus, when a class-action litigation has created a communal pool of funds to be distributed to the class members, courts have approved incentive awards to be drawn out of that common pool." *Id.*

Here, Mr. Sheean took critical and necessary steps to protect the interests of the class, and he spent considerable time pursuing their claims. Specifically, Mr. Sheean frequently communicated with his counsel by telephone and email. He kept himself apprised of this matter by reviewing documents filed with this Court, providing a declaration in support of class certification, and by approving drafts before filing. Further, Mr. Sheean made himself available during the parties' mediation in Philadelphia and remained engaged in the settlement negotiations that continued during the weeks to follow. *See* Ex. A, ¶¶ 83-86; *see also* ECF No. 46-3 at 4, ¶¶ 21, 26-27.

Given Mr. Sheean's active participation in this matter, and as recognition for the results he provided to the classes, an incentive award of $5,000 is well justified. Indeed, the requested incentive award is in line with—and in many cases less than—incentive awards approved in comparable TCPA matters within this Circuit. *See, e.g.*, *Evans v. Am. Power & Gas, LLC*, No. 17-515, 2019 WL 2205902, at *2 (S.D. Ohio May 22, 2019) (awarding $10,000); *Am. Copper & Brass, Inc.*, 2016 WL 6272094, at *2 (same); *Spine & Sports Chiropractic, Inc.*, 2015 WL 9413143, at *3 ($5,000); *Jackson's Five Star Catering, Inc. v. Beason*, No. 10-10010, ECF No. 90 (E.D. Mich. Apr. 15, 2015) (Tarnow, J.) ($15,000); *Sandusky Wellness Ctr., LLC v. Heel, Inc.*, No. 12-1470, ECF No. 95 (N.D. Ohio Apr. 25, 2014) (same); *Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*, No. 11-1074, ECF No. 84 (N.D. Ohio Dec. 3, 2012) (same).

This Court, therefore, should approve an incentive award to Mr. Sheean of $5,000.[6]

## III. This Court should approve class counsel's request for reimbursement of litigation costs and expenses.

"Under the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of

---

[6]   Once approved, Mr. Sheean's incentive award will be apportioned fairly between the common funds such that $50 is paid from the FDCPA Class fund and the remaining $4,950 is paid from the TCPA Class fund.

claims and in obtaining settlement." *Todd S. Elwert DC, Inc.*, 2018 WL 4539287, at *5; *accord In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 519 (W.D. Pa. 2003) ("There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of . . . reasonable litigation expenses from that fund.").

Here, class counsel incurred reasonable costs and expenses in connection with this matter, including filing and service fees, mediation costs, travel costs, and costs associated with retaining Mr. Sheean's expert witness. These categories of expenses for which class counsel seek reimbursement are the type of expenses routinely charged to paying clients in the marketplace and thus are properly reimbursed under Rule 23. *See, e.g.*, *Todd S. Elwert DC, Inc.*, 2018 WL 4539287, at *5 ("Reasonable expenses include the costs of document production, consulting with experts, travel, and other litigation-related expenses.").

Class counsel seek reimbursement for $13,337.49 in litigation costs and expenses. *See* Ex. A, ¶¶ 87-91 (documenting reimbursable litigation costs and expenses). These expenses are eminently reasonable in a class action like this and were necessary for the successful prosecution of this action on behalf of both classes. Worth noting, to date, no class members have lodged an objection to counsel's request for reimbursement of litigation costs and expenses, which are less than the $17,500 in total costs and expenses set forth in the class notices.

## Conclusion

Mr. Sheean respectfully requests that this Court approve an award of attorneys' fees in the amount of $1,250,000, reimbursement of litigation costs and expenses in the amount of $13,337.49, and an incentive award of $5,000.

Dated: August 23, 2019

*/s/ Aaron D. Radbil*
Aaron D. Radbil
Greenwald Davidson Radbil PLLC
401 Congress Avenue, Suite 1540
Austin, Texas 78701
Tel: (512) 803-1578
Fax: (561) 961-5684
aradbil@gdrlawfirm.com

Michael L. Greenwald
James L. Davidson
Alexander D. Kruzyk
Greenwald Davidson Radbil PLLC
7601 N. Federal Highway, Suite A-230
Boca Raton, Florida 33487
Tel: (561) 826-5477
Fax: (561) 961-5684
mgreenwald@gdrlawfirm.com
jdavidson@gdrlawfirm.com
akruzyk@gdrlawfirm.com

*Class Counsel*

Andrew Campbell
Attorney at Law
1000 Beach Street, Suite B West Entrance
Flint, MI 48502
Phone: (810) 232-4344
michiganbk@gmail.com

*Liaison Counsel*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed electronically on August 23, 2019, via the Court Clerk's CM/ECF system, which will provide notice to all counsel of record.

*/s/ Aaron D. Radbil*
Aaron D. Radbil