UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| Michael Sheean, *on behalf of himself and others similarly situated*, | ) Case No: 2:18-cv-11532-GCS-RSW ) |
| | ) Hon. George Caram Steeh |
| Plaintiff, | ) |
| | ) Mag. Judge R. Steven Whalen |
| v. | ) |
| | ) |
| Convergent Outsourcing, Inc., | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT**

The settlement—which the parties reached after contentious, arm's length

negotiations, and with the assistance of well-respected mediator Judge Diane Welsh

(Ret.)—provides for respective, all-cash, non-reversionary settlement funds of

$3,710,000 for the Telephone Consumer Protection Act ("TCPA") class, and

$40,000 for the Fair Debt Collection Practices Act ("FDCPA") class.

After receiving notice of the settlement, over 13,000 members of the classes

submitted valid claims for their *pro rata* share of the respective settlement funds.

Correspondingly, after deducting from the respective settlement funds all costs of

notice and claims administration, attorneys' fees, costs, litigation expenses, and

incentive awards—which are subject to this Court's approval, *see* ECF No. 60—

1

each participating TCPA class member will receive approximately $165.56, and each participating FDCPA class member will receive approximately $181.97.[1]

Moreover, only 15 TCPA class members excluded themselves from the settlement, no FDCPA class members excluded themselves from the settlement, and not a single TCPA or FDCPA class member submitted an objection. Given as much, Mr. Sheean respectfully requests that this Court finally approve the settlement, and enter a final judgment and order.

Pursuant to Local Rule 7.1(a), undersigned counsel conferred with counsel for Defendant regarding this motion, and Defendant does not oppose the relief requested.

Dated: October 11, 2019        */s/ Aaron D. Radbil*

Aaron D. Radbil
Greenwald Davidson Radbil PLLC
401 Congress Avenue, Suite 1540
Austin, Texas 78701
Tel: (512) 803-1578
Fax: (561) 961-5684
aradbil@gdrlawfirm.com

Michael L. Greenwald
James L. Davidson
Alexander D. Kruzyk
Greenwald Davidson Radbil PLLC
7601 N. Federal Highway, Suite A-230

[1]    These figures assume an award of the requested attorneys' fees, costs, expenses, and incentive payments, *see* ECF No. 60, and may either increase slightly if duplicate or fraudulent claims are identified, or decrease slightly if this Court permits potential later-filed claims.

Boca Raton, Florida 33487
Tel: (561) 826-5477
Fax: (561) 961-5684
mgreenwald@gdrlawfirm.com
jdavidson@gdrlawfirm.com
akruzyk@gdrlawfirm.com

*Class Counsel*

Andrew Campbell
Attorney at Law
1000 Beach Street, Suite B West Entrance
Flint, MI 48502
Phone: (810) 232-4344
michiganbk@gmail.com

*Liaison Counsel*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed electronically on October 11, 2019, via the Court Clerk's CM/ECF system, which will provide notice to all counsel of record.

*/s/ Aaron D. Radbil*
Aaron D. Radbil

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| Michael Sheean, *on behalf of himself and others similarly situated*, | ) ) ) | Case No: 2:18-cv-11532-GCS-RSW |
| | ) | Hon. George Caram Steeh |
| Plaintiff, | ) ) | Mag. Judge R. Steven Whalen |
| v. | ) ) | |
| Convergent Outsourcing, Inc., | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

**BRIEF IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

# Table of Contents

Summary of Settlement ...................................................................1

Claims Administration ...................................................................2

Argument ...................................................................4

  I.   The settlement satisfies all requirements and merits final approval. ..............4

     A.    There was no fraud or collusion underlying the parties' negotiations. .....5

     B.    The complexity, expense, and duration of the litigation in this matter favors final approval of the settlement. ...............................................6

     C.    The parties sufficiently developed a record through discovery to enable Plaintiff and his counsel to make a reasoned judgment concerning settlement. 7

     D.    The probability of Plaintiff's success on the merits coupled with the range of possible recovery favors final approval. ...............................................9

     E.    The opinions of Plaintiff and his counsel strongly favor final approval of the settlement...................................................................16

     F.    The reaction of absent class members supports final approval. ..............17

     G.    The public interest favors final approval of the settlement. ....................18

  II.   Plaintiff and his counsel have adequately represented the classes. ............19

  III.   The settlement treats class members equitably...........................................19

  IV.   Distribution of notice satisfied due process requirements. .........................20

Conclusion...................................................................21

# Index of Authorities

## Cases

*Agne v. Papa John's Int'l, et al.*, No. 2:10-cv-01139 (W.D. Wash. Oct. 22, 2013) .................................................................................................13

*Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*, No. 15-2460, 2016 WL 4766079 (E.D. Pa. Sept. 13, 2016) .......................................15

*Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345 (E.D.N.Y. 2006) ..........................15

*Brent v. Midland Funding, LLC*, No. 3:11 CV 1332, 2011 WL 3862363 (N.D. Ohio Sept. 1, 2011) ...................................................................................6

*Clark v. Payless ShoeSource, Inc.*, No. 2:09-cv-00915 (W.D. Wash. July 27, 2012) .................................................................................................13

*Connor v. JPMorgan Chase Bank*, No. 10 CV1284 (S.D. Cal. May 30, 2014)......12

*Couser v. Comenity Bank*, 125 F. Supp. 3d 1034 (S.D. Cal. 2015) .......................12

*Cross v. Wells Fargo Bank, N.A.*, No. 15-cv-1270, 2016 WL 5109533 (N.D. Ga. Sept. 13, 2016) ...............................................................................11

*Cubbage v. The Talbots, Inc. et al.*, No. 2:09-cv-00911 (W.D. Wash. Nov. 5, 2012) .................................................................................................13

*Date v. Sony Elecs., Inc.*, No. 07-15474, 2013 WL 3945981 (E.D. Mich. July 31, 2013) .................................................................................................18

*Duke v. Bank of Am., N.A.*, No. 12-4009 (N.D. Cal.)...........................................12

*Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) .......................................................20

*Garret v. Sharps Compliance, Inc.*, No. 1:10-cv-04030  (N.D. Ill. Nov. 5, 2012) .................................................................................................13

*Gary v. TrueBlue, Inc.*, 346 F. Supp. 3d 1040 (E.D. Mich. 2018) ........................10

*Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215 (N.D. Ill. 2016).....................12

*Granada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203 (6th Cir. 1992) .............6

*Green v. Dressman Benzinger Lavelle, PSC*, No. 1:14–CV–00142–SJD, 2015 WL 223764 (S.D. Ohio Jan. 16, 2015) ................................................................15

*Hainey v. Parrot*, 617 F. Supp. 2d 668 (S.D. Ohio 2007) ........................................5

*Hale v. State Farm Mutual Automobile Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079 (S.D. Ill. Dec. 16, 2018) ........................................................20

*Hall v. Frederick J. Hanna & Assocs., P.C.*, 2016 WL 2865081 (N.D. Ga. May 10, 2016) ................................................................15

*Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935 (D. Minn. 2016) ............12

*Henderson v. Eaton*, No. 01-0138, 2002 WL 31415728 (E.D. La. Oct. 25, 2002) ................................................................16

*In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) ................................................................12

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003) ............6, 17

*In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075 (6th Cir. 1984) ...............9

*In re Jiffy Lube Int'l, Inc.*, No. 11-md-02261 (S.D. Cal. Feb. 20, 2013) ...............13

*In re Skechers Toning Shoe Prod. Liab. Litig.*, No. 3:11-MD-2308-TBR, 2013 WL 2010702 (W.D. Ky. May 13, 2013) ................................................17

*In Re: Convergent Telephone Consumer Protection Act Litig.*, No. 3:13-md-02478-AWT (D. Conn. Apr. 5, 2016) ................................................10

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007) ...............................4, 7, 9, 18

*James v. JPMorgan Chase Bank, N.A.*, No. 15-2424, 2016 WL 6908118 (M.D. Fla. Nov. 22, 2016) ................................................................11

*Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291 (S.D. Miss. 2014) ......................7

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* No. 1:06 CV 1397, 2011 WL 1434679 (N.D. Ohio 2011) ................................................15

*Keyes v. Ocwen Loan Servicing, LLC*, 335 F. Supp. 3d 951 (E.D. Mich. 2018) ....10

*Kolinek v. Walgreen Co.*, 311 F.R.D. 483 (N.D. Ill. 2015).....................................12

*Little-King v. Hayt & Landau*, No. 11-5621 (MAH), 2013 WL 4874349 (D.N.J. Sept. 10, 2013) ....................................................................................15

*Luster v. Wells Fargo Dealer Servs., Inc.*, No. 15-1058 (N.D. Ga. Feb. 23, 2017) ............................................................................................11

*Markos v. Wells Fargo Bank, N.A.*, No. 15-1156, 2016 WL 4708028 (N.D. Ga. Sept. 7, 2016) ............................................................................11, 13

*Olden v. Gardner*, 294 F. App'x 210 (6th Cir. 2008) ...........................................17

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011) ......................................................................................5

*Prather v. Wells Fargo Bank, N.A.*, No. 15-4231, 2017 WL 770132 (N.D. Ga. Feb. 24, 2017) ........................................................................11

*Rose v. Bank of Am. Corp.*, Nos. 11-2390, 12-4009, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014)..........................................................................13

*Schell v. Frederick J. Hanna & Assocs., P.C.*, No. 3:15-cv-418, 2016 WL 1273297 (S.D. Ohio Mar. 31, 2016) ...................................................15

*Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673 (N.D. Cal. 2016) .....14

*Spillman v. RPM Pizza, LLC*, No. 10-349, 2013 WL 2286076 (M.D. La. May 23, 2013) .....................................................................................13

*Steinfeld v. Discover Fin. Servs.*, No. 12-cv-1118, 2014 WL 1309352 (N.D. Cal. Mar. 31, 2014)..........................................................................13

*Stinson v. Delta Mgmt. Assocs., Inc.*, 302 F.R.D. 160 (S.D. Ohio 2014)...............18

*Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521 (E.D. Ky. 2010) ..............................................................................5, 9, 16

*Thornton v. State Farm Mut. Auto Ins. Co.*, No. 1:06-CV-00018, 2006 WL 3359482 (N.D. Ohio Nov. 17, 2006) ...................................................7

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976)..............................6

*Whitford v. Weber & Olcese, P.L.C.*, No. 1:15-cv-400, 2016 WL 122393 (W.D. Mich. Jan. 11, 2016) ...........................................................................................15

*Wilkins v. HSBC Bank Nev., N.A.*, No. 14-190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015) .....................................................................................11, 12

*Williams v. Bluestem Brands, Inc.*, No. 17-1971, 2019 WL 1450090 (M.D. Fla. Apr. 2, 2019) ......................................................................................11

*Wright v. Nationstar Mortage LLC*, No. 14 C 10457, 2016 WL 4505169 (N.D. Ill. Aug. 29, 2016) .....................................................................................12

*Wright v. Premier Courier, Inc.*, No. 2:16-CV-420, 2018 WL 3966253 (S.D. Ohio Aug. 17, 2018) ...............................................................................16

**Statutes**

15 U.S.C. § 1692k ..........................................................................................14

28 U.S.C. § 1715 ............................................................................................4

**Other Authorities**

2 Mclaughlin On Class Actions § 6:7 (8th ed. 2011) ...............................................5

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 (4th ed. 2002) .........................................................................................18

**Rules**

Fed. R. Civ. P. 23(e) ..................................................................................4, 20

**Statement of the Issue Presented**

Whether this Court should finally approve the settlement as fair, reasonable, and adequate, and enter a final judgment and order.

**Compelling/Most Appropriate Authorities**

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v.*

*Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007).

## Summary of Settlement

Through his class action complaint, Plaintiff alleged that Defendant systematically violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. Defendant denied Plaintiff's allegations. The parties, nonetheless, agreed to resolve this matter on behalf of two distinct classes:

> *TCPA class*: All persons throughout the United States (1) to whom Convergent Outsourcing, Inc. placed, or caused to be placed, a call, (2) by using an automatic telephone dialing system or an artificial or prerecorded voice, (3) from November 11, 2016 through February 25, 2019, (4) either (i) directed to a number assigned to a cellular telephone service, but not assigned to the intended recipient of Convergent Outsourcing, Inc.'s calls, or (ii) directed to a number assigned to a cellular telephone service, to which Convergent Outsourcing, Inc. was previously instructed to stop placing calls.

> *FDCPA class*: All persons throughout the United States (1) to whom Convergent Outsourcing, Inc. placed, or caused to be placed, a call, (2) from May 15, 2017 through February 25, 2019, (3) and in connection with the collection of a consumer debt, (4) after Convergent Outsourcing, Inc. was instructed to stop placing calls to his or her telephone number.

To compensate class members, Defendant agreed to create two separate non-reversionary common funds. The respective amounts of the funds are $3,710,000 to compensate TCPA class members, and $40,000 to compensate FDCPA class members.

Paid from the common funds will be: compensation to class members; the cost of notice to class members and claims administration for class members; litigation

1

costs and expenses associated with the classes, for which Plaintiff's counsel separately petitioned this Court; reasonable attorneys' fees, calculated as a percentage of the common funds, for which Plaintiff's counsel separately petitioned this Court; and incentive awards to Plaintiff, for which Plaintiff's counsel separately petitioned this Court. *See* ECF No. 60.

### Claims Administration

Kurtzman Carson Consultants ("KCC")—the claims administration company this Court approved, *see* ECF No. 59 at 5—delivered to potential class members notice of the settlement. The resulting claims rate, extremely small number of exclusions, and lack of objections demonstrate not only the effectiveness of the notice, but also class members' satisfaction with the settlement.

*Direct Mail Notice*: KCC caused 308,898 notices to be mailed to potential TCPA class members, and 470 notices to be mailed to potential FDCPA class members. *See* Declaration of Jay Geraci, ¶ 7, attached as Exhibit A. KCC re-mailed any notices returned undeliverable to forwarding addresses, where undeliverable notices were returned with a forwarding address. *Id*., ¶ 8. For undeliverable notices returned without a forwarding address, KCC performed advanced address searches to locate updated addresses, and re-mailed notices to any updated addresses obtained. *Id*., ¶ 9.

*Publication Notice*: To supplement the already-robust direct mail notice, KCC caused the summary notice to be published as an eight-page ad unit in the August 8, 2019 edition of *USA Today*. *Id*., ¶ 10.

*Settlement Website*: KCC established and maintains respective websites dedicated to the settlement—www.SheeanTCPASettlement.com and www.SheeanFDCPASettlement.com—which include information pertinent to class members as well as answers to frequently asked questions. *Id*., ¶ 11. Class members were able to file claims via the respective settlement websites.

*Toll-Free Hotline*: KCC established and maintains respective toll-free telephone numbers—(844) 796-7585 for the TCPA class and (855) 445-9432 for the FDCPA class—for class members to obtain information about the settlement. *Id*., ¶ 12. The toll-free telephone numbers were activated on August 7, 2019, and remain accessible twenty-four hours a day, seven days a week. *Id*.

*Claims*: Over 13,000 class members submitted valid claims. *Id*., ¶ 13.

*Exclusions*: 15 TCPA class members excluded themselves from the settlement. *Id*., ¶ 14. No FDCPA class members excluded themselves from the settlement. *Id*.

*Objections*: No class member objected to the Settlement. *Id*., ¶ 15.

3

*Class Action Fairness Act Notice*: KCC timely served notice required by the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715. *Id.*, ¶ 2. No government official, state or federal, objected to or raised an issue regarding the settlement.

**Argument**

### I.   The settlement satisfies all requirements and merits final approval.

"Before approving a settlement, a district court must conclude that it is 'fair, reasonable, and adequate.'" *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (quoting Fed. R. Civ. P. 23(e)) ("*UAW*"). "Several factors guide the inquiry: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *Id.*

As well, Rule 23(e) mandates consideration of other factors, including that the class representative and class counsel have adequately represented class members, and that the settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e).

Here, each relevant factor demonstrates that the settlement is fundamentally fair, reasonable, and adequate. Accordingly, this Court should finally approve the settlement, and enter a final judgment and order.

4

**A. There was no fraud or collusion underlying the parties' negotiations.**

"Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 531 (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011). Here, not only is there no evidence of fraud or collusion, but the parties' arm's-length settlement negotiations, overseen by an experienced mediator, underscore that the settlement was fairly negotiated.

In particular, the parties engaged in contested litigation for well over a year. And only after fact discovery in this matter closed did the parties mediate their dispute with the assistance of the Hon. Diane Welsh (Ret.).[2] Important, then, is that "[t]he participation of an independent mediator in the settlement negotiations virtually assures that the negotiations were conducted at arm's length and without collusion between the parties." *Hainey v. Parrot*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007); *see also* 2 Mclaughlin On Class Actions § 6:7 (8th ed. 2011) ("A

---

[2]    "Hon. Diane M. Welsh (Ret.) is highly respected for her ability to successfully resolve disputes with sensitivity, patience, and persistence. Over the past 23 years, as a JAMS neutral and a United States Magistrate Judge, she has successfully resolved over 5000 matters, covering virtually every type of complex dispute. Specifically, Judge Welsh has extraordinary skill in resolving high-stakes multi-party commercial disputes, employment matters, catastrophic personal injury cases, class actions, mass torts and multi-district litigations (MDL's). She was recognized as a 2016-2018 'ADR Champion' by the National Law Journal." https://www.jamsadr.com/welsh/ (last visited Oct. 8, 2019).

settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion.").

With this in mind, the absence of fraud or collusion underlying the parties' negotiations supports final approval of the settlement.

### B. The complexity, expense, and duration of the litigation in this matter favors final approval of the settlement.

Complex litigation is "notoriously difficult and unpredictable." *Granada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992). Not surprising, therefore, is that "[t]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (Edmunds, J.). Indeed, "[m]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Brent v. Midland Funding, LLC*, No. 3:11 CV 1332, 2011 WL 3862363, at *16 (N.D. Ohio Sept. 1, 2011); *accord Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) (public interest in settling litigation is "particularly true in class action suits . . . which frequently present serious problems of management and expense").

Here, Plaintiff filed his class action complaint in May 2018, alleging systematic violations of the TCPA and FDCPA on behalf of nationwide classes. *See* ECF No. 1. And while fact discovery closed in May 2019, on the date the parties

reached their agreement to resolve this matter, expert discovery remained open, Plaintiff's motion for class certification was pending, the parties had yet to file their respective motions for summary judgment, and trial was not set to begin until late October 2019. *See* ECF Nos. 9, 48. Moreover, at issue were complex claims under two distinct federal statutes—the TCPA and the FDCPA—on behalf of nationwide classes that, collectively, include hundreds of thousands of members.

Considering this, final approval of the settlement is appropriate. *See Thornton v. State Farm Mut. Auto Ins. Co.*, No. 1:06-CV-00018, 2006 WL 3359482, at *3 (N.D. Ohio Nov. 17, 2006) ("As a number of courts have recognized, litigation is necessarily fraught with uncertainty, such that it is often advisable 'to take a bird in the hand instead of a prospective flock in the bush.'").

### C. The parties sufficiently developed a record through discovery to enable Plaintiff and his counsel to make a reasoned judgment concerning settlement.

In reviewing class action settlements, courts also consider the amount of discovery in which parties engage. *UAW*, 497 F.3d at 631. This includes "the degree of case development that class counsel have accomplished prior to settlement to ensure that counsel had an adequate appreciation of the merits of the case before negotiating." *Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 303-04 (S.D. Miss. 2014).

Here, the parties sufficiently developed a factual record necessary to guide their settlement discussions. This is evidenced, in part, by the substance of the various discovery disputes the parties raised in connection with this case, and this Court's resulting orders. *See* ECF Nos. 10, 17-20, 23, 25, 26, 31, 33, 35, 38-39, 41, 43. Additionally, Plaintiff issued, and Defendant answered and responded to—initially and through supplements—voluminous written discovery requests, including interrogatories and requests for production. As well, Plaintiff's counsel deposed Defendant's Rule 30(b)(6) witness, obtained third party discovery from both AT&T, Inc., and a vendor—LiveVox, Inc.—that Defendant used to place some of the calls in question, and solicited a report from a notice and claims administration expert. *See* ECF No. 46-8.

For its part, Defendant attempted to obtain additional information by issuing nine subpoenas for documents and testimony to third parties, including Sprint Corporation, Microbilt Corporation, AT&T Inc., T-Mobile USA, Inc., TransUnion Risk and Alternative Data Solutions, Inc., Verizon Communications, Inc., LexisNexis Risk Solutions, Inc., United States Cellular Corporation, and Interactive Marketing Solutions, Inc. *See* ECF No. 57 at 14, ¶ 58.

The record the parties developed through discovery was therefore adequate to enable Plaintiff and his counsel to make a reasoned judgment concerning the settlement.

8

### D. The probability of Plaintiff's success on the merits coupled with the range of possible recovery favors final approval.

"The likelihood of success . . . provides a gauge from which the benefits of the settlement must be measured." *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984). And "[t]he fairness of each settlement turns in large part on the bona fides of the parties' legal dispute. Although this inquiry understandably does not require us to decide the merits of the case or resolve unsettled legal questions," a court must nevertheless "weigh[] the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." *UAW*, 497 F.3d at 631.

Notably, in determining whether a settlement is fair in light of the potential range of recovery, a court should be guided by the important maxim that a proposed settlement may be only a fraction of the theoretical recovery, yet still fair and adequate in light of the attendant risks of litigation. *Thacker*, 695 F. Supp. 2d at 532.

Here, Plaintiff faced a number of hurdles in certifying the classes and prevailing on the merits of his claims. For example, in the TCPA context, counsel in a previous TCPA class action against Defendant summarized the issues Plaintiff potentially faced regarding certification:

> . . . Class Plaintiffs and their counsel have considered the risks inherent to litigation and the various defenses available to Convergent. The reality that Class Plaintiffs and the Settlement Class Members could end up recovering nothing or only a fraction of the settlement benefits if the Court did not certify a class . . . .

9

\*      \*      \*

> Class Plaintiffs and their counsel knew that going forward there was a significant risk that the Court would decline to certify this case as a class action. A central issue in this case is whether Convergent possessed the prior express consent of class members it called using an automated telephone dialing system. Courts have offered differing opinions in other cases under the TCPA regarding whether questions of consent require an individualized inquiry and thus denied class certification, though the majority appear to deny class certification on the consent issue.

*In Re: Convergent Telephone Consumer Protection Act Litig.*, No. 3:13-md-02478-AWT, ECF No. 233 at 19-20 (D. Conn. Apr. 5, 2016).[3]

As for the merits of Plaintiff's TCPA claims, Defendant argued that it did not use an automatic telephone dialing system to place the calls at issue—a defense to claims under the TCPA that finds possible support in opinions issued by judges in this district. *See, e.g.*, *Gary v. TrueBlue, Inc.*, 346 F. Supp. 3d 1040, 1044 (E.D. Mich. 2018) (Drain, J.) (granting the defendant's motion for summary judgment, in part, because the dialer at issue did not "ha[ve] the capacity to randomly or sequentially dial"); *Keyes v. Ocwen Loan Servicing, LLC*, 335 F. Supp. 3d 951, 963 (E.D. Mich. 2018) (Drain, J.) (same).

---

[3]   While Plaintiff believes that Defendant waived any defense it may have had based on prior express consent, Defendant's position is that such a defense remained available to it.

But despite the pitfalls Plaintiff faced in connection with his TCPA claims, the settlement provides for a $3.71 million non-reversionary common fund to compensate up-to approximately 350,000 potential TCPA class members. Of note, the resulting unadjusted settlement value—approximately $10.60 per class member—meets or exceeds that of many analogous TCPA class action settlements. *See generally, e.g.*, *Williams v. Bluestem Brands, Inc.*, No. 17-1971, 2019 WL 1450090 (M.D. Fla. Apr. 2, 2019) (approximately $7 per class member); *Prather v. Wells Fargo Bank, N.A.*, No. 15-4231, 2017 WL 770132 (N.D. Ga. Feb. 24, 2017) ($4.65 per class member); *Luster v. Wells Fargo Dealer Servs., Inc.*, No. 15-1058, ECF No. 60 (N.D. Ga. Feb. 23, 2017) ($4.65 per class member); *James v. JPMorgan Chase Bank, N.A.*, No. 15-2424, 2016 WL 6908118 (M.D. Fla. Nov. 22, 2016) ($5.55 per class member); *Cross v. Wells Fargo Bank, N.A.*, No. 15-cv-1270, 2016 WL 5109533 (N.D. Ga. Sept. 13, 2016) ($4.75 per class member); *Markos v. Wells Fargo Bank, N.A.*, No. 15-1156, 2016 WL 4708028 (N.D. Ga. Sept. 7, 2016) ($4.95 per class member); *Wilkins v. HSBC Bank Nev., N.A.*, No. 14-190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015) ($2.95 per class member); *Picchi v. World Fin. Network Bank*, No. 11-61797, ECF Nos. 131, 161 (S.D. Fla. Jan. 30, 2015 and Dec. 18, 2015)

($2.63 per class member); *Duke v. Bank of Am., N.A.*, No. 12-4009, ECF Nos. 51, 59 (N.D. Cal. Feb. 19 2014 and Aug. 29, 2014) ($4.15 per class member).[4]

As well, after deducting the requested attorneys' fees, litigation costs and expenses, costs of notice and claims administration, and incentive awards, *see* ECF No. 60, participating TCPA class members who submitted valid claims will receive approximately $165.56, which is an amount on the higher end of TCPA class action settlements generally. *See In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (finding that $34.60 per claimant falls "within the range of recoveries" in a TCPA class action); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) (noting that while "thirty dollars per claimant 'falls on the lower end of the scale,' it is nonetheless 'within the range of recoveries' in TCPA class actions"); *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 947 (D. Minn. 2016) ($33.20 per claimant); *Gehrich*, 316 F.R.D. at 228 ($52.50 per claimant); *Wright v. Nationstar Mortg. LLC*, No. 14-10457, 2016 WL 4505169, at *8 (N.D. Ill. Aug. 29, 2016) (approximately $45 per claimant); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1047 (S.D. Cal. 2015) ($13.75 per claimant); *Rose v.*

---

[4]      *See also Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215 (N.D. Ill. 2016) ($34 million for more than 32 million class members); *Wilkins v. HSBC Bank Nev., N.A.*, No. 14-190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015) ($39.98 million for more than 9,065,262 class members); *Connor v. JPMorgan Chase Bank*, No. 10 CV1284, ECF No. 113 (S.D. Cal. May 30, 2014) ($11.66 million for 2,684,518 class members).

*Bank of Am. Corp.*, Nos. 11-2390, 12-4009, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (between $20 and $40 per claimant); *Steinfeld v. Discover Fin. Servs.*, No. 12-1118, 2014 WL 1309352, at *7 (N.D. Cal. Mar. 31, 2014) (less than $50 per claimant).[5]

At bottom, the TCPA-specific portion of the settlement constitutes an objectively fair result. *See Markos v. Wells Fargo Bank, N.A.*, No. 1:15-cv-01156-LMM, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) (finding that the cash recovery of $24 per claimant in a TCPA class action—less than the approximately $165.56 recovery here—is "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter").

Regarding Plaintiff's FDCPA claims, Defendant argued that its bona fide error defense would eliminate any liability it possibly had under the FDCPA. More specifically, Defendant contended that the language in section 1692k(c) of the

---

[5]   *See also Spillman v. RPM Pizza, LLC*, No. 10-349, 2013 WL 2286076, at *4 (M.D. La. May 23, 2013) (approving a TCPA class action settlement that provides up to $15 cash payment); *In re Jiffy Lube Int'l, Inc.*, No. 11-md-02261, ECF No. 97 (S.D. Cal. Feb. 20, 2013) (class members entitled to vouchers for services valued at $17.29 or a cash payment of $12.97); *Garret v. Sharps Compliance, Inc.*, No. 1:10-cv-04030, ECF No. 74 (N.D. Ill. Nov. 5, 2012) ($28.13 recovery per claimant); *Agne v. Papa John's Int'l, et al.*, No. 2:10-cv-01139, ECF No. 389 (W.D. Wash. Oct. 22, 2013) ($50 cash recovery plus $13 in merchandise per claimant); *Clark v. Payless ShoeSource, Inc.*, No. 2:09-cv-00915, ECF No. 72 (W.D. Wash. July 27, 2012) ($10 merchandise certificate per claimant); *Cubbage v. The Talbots, Inc. et al.*, No. 2:09-cv-00911, ECF No. 114 (W.D. Wash. Nov. 5, 2012) ($40 or $80 merchandise certificate per claimant).

FDCPA—which states that a "debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error"—stood as an absolute bar to Plaintiff's ability to recover under the FDCPA given Defendant's procedures for coding telephone numbers in its account management system as "do not call" numbers, in order to prevent future calls to individuals who previously requested that Defendant stop calling them.

And even if Plaintiff were to have prevailed on his FDCPA claims, there was no guarantee of a full statutory damages recovery at trial because the FDCPA's damages provision is permissive rather than mandatory. That is, the law provides for statutory damages awards *up to* certain amounts—$1,000 for Plaintiff, and the lesser of $500,000 or one percent of Defendant's book value net worth for the class—after balancing such factors as the nature of Defendant's noncompliance, the number of persons adversely affected, and the extent to which Defendant's noncompliance was intentional. *See* 15 U.S.C. § 1692k(b)(2). Accordingly, even had Plaintiff prevailed on his FDCPA claims, a jury may have awarded little in the way of statutory damages, or even none at all. *See Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 683 (N.D. Cal. 2016) ("Because damages are not mandatory, continued litigation presents a risk to Plaintiffs of expending time and money on this case with

the possibility of no recovery at all for the Class. In light of the risks and costs of continued litigation, the immediate reward to Class Members is preferable."); *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* No. 1:06 CV 1397, 2011 WL 1434679, at *11 (N.D. Ohio 2011) (analyzing the factors set forth in 15 U.S.C. § 1692k, and awarding no "additional damages" to members of the class).

Against this backdrop, $40,000 for up to 571 potential FDCPA class members—an unadjusted figure of approximately $70 per class member—represents an excellent recovery, which compares favorably to other FDCPA class settlements approved throughout the country. *See, e.g.*, *Schell v. Frederick J. Hanna & Assocs., P.C.*, No. 3:15-cv-418, 2016 WL 1273297, at *3 (S.D. Ohio Mar. 31, 2016) ($10 per class member); *Whitford v. Weber & Olcese, P.L.C.*, No. 1:15-cv-400, 2016 WL 122393, at *2 (W.D. Mich. Jan. 11, 2016) (same); *Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*, No. 15-2460, 2016 WL 4766079, at *3 (E.D. Pa. Sept. 13, 2016) ($10.92 per class member); *Hall v. Frederick J. Hanna & Assocs., P.C.*, 2016 WL 2865081, at *3 (N.D. Ga. May 10, 2016) ($10 per class member); *Green v. Dressman Benzinger Lavelle, PSC*, No. 1:14–CV–00142–SJD, 2015 WL 223764, at *3 (S.D. Ohio Jan. 16, 2015) (approximately $31 per class member); *Little-King v. Hayt & Landau*, No. 11-5621 (MAH), 2013 WL 4874349, at *14 (D.N.J. Sept. 10, 2013) ($7.87 per class member); *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 355 (E.D.N.Y. 2006) ($7.32 per class member).

In the end, weighing the probability of Plaintiff's success, coupled with the range of possible recovery, strongly favors final approval here, especially considering that each FCDPA claimant will receive approximately $181.97. *See Wright v. Premier Courier, Inc.*, No. 2:16-CV-420, 2018 WL 3966253, at *5 (S.D. Ohio Aug. 17, 2018) ("Accordingly, due to the existence of uncertainties inherent in their claims, Plaintiffs' likelihood of success on the merits remains uncertain. This factor therefore weighs in favor of approving the Proposed Settlement."); *Henderson v. Eaton*, No. 01-0138, 2002 WL 31415728, at *3 (E.D. La. Oct. 25, 2002) ("several fundamental issues in the case remained in dispute: whether the defendant violated the FDCPA; whether the alleged violation was merely technical; and whether the alleged violation was willful and clear. Resolving these questions through a trial and, ostensibly, an appeal, would likely be burdensome and costly.").

### E.  The opinions of Plaintiff and his counsel strongly favor final approval of the settlement.

When it comes to class action settlements, courts accord great weight to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation. *See Thacker*, 695 F. Supp. 2d at 532 ("In deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference."); *In re Skechers Toning Shoe Prod. Liab.*

*Litig.*, No. 3:11-MD-2308-TBR, 2013 WL 2010702, at *6 (W.D. Ky. May 13, 2013) (same).

Here, Plaintiff and his counsel firmly believe that the settlement is fair, reasonable, and adequate, and in the best interests of class members. *See* ECF No. 57 at 18, ¶ 76. And this support for the settlement additionally justifies final approval of it.

### F. The reaction of absent class members supports final approval.

"If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *In re Cardizem*, 218 F.R.D. at 527; *see also, e.g.*, *Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008) (finding that 79 objections in a class of nearly 11,000 "tends to support a finding that the settlement is fair"). Here, not a single class member objected to the settlement.

Moreover, "[t]hat the overwhelming majority of class members have elected to remain in the Settlement Class, without objection, constitutes the 'reaction of the class,' as a whole, and demonstrates that the Settlement is 'fair, reasonable, and adequate.'" *In re Cardizem*, 218 F.R.D. at 527. Here, only 15 TCPA class members excluded themselves from the settlement, and no FDCPA class members excluded themselves from the settlement. Thus, the reaction of absent class members to the settlement supports final approval of it.

**G. The public interest favors final approval of the settlement.**

In considering the above-referenced factors, a court should be guided by the general principle that class action settlements should be favored. *See, e.g.*, *UAW*, 497 F.3d at 632 (noting the "federal policy favoring settlement of class actions"); *Date v. Sony Elecs., Inc.*, No. 07-15474, 2013 WL 3945981, at *5 (E.D. Mich. July 31, 2013) (Borman, J.) ("Settlement of class action litigation is strongly favored in the law and as a matter of federal policy."); Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

As the Southern District of Ohio wrote in approving an FDCPA class action settlement:

> The settlement also serves the public interest because it promotes compliance with the FDCPA, which Congress enacted in order to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses. 15 U.S.C. § 1692(e)."

*Stinson v. Delta Mgmt. Assocs., Inc.*, 302 F.R.D. 160, 165 (S.D. Ohio 2014).

The same is true here, as the settlement promotes compliance with both the TCPA and FDCPA.

**II.    Plaintiff and his counsel have adequately represented the classes.**

Plaintiff was, throughout this matter, "committed to helping other people who also received autodialed calls from Convergent without permission, and [he] brought this case as a class action for that purpose." ECF No. 46-3 at 4, ¶ 21. He "stay[ed] updated on the case and sp[oke] with [his] attorneys regularly, both on the telephone and by email." *Id.*, ¶ 26. And Plaintiff remained "prepared to make all necessary decisions involving this case in the best interests of the class members that [he] seek[s] to represent." *Id.*, ¶ 27.

Plaintiff's counsel is experienced in complex litigation and have served as class counsel on numerous occasions. *See* ECF No. 57 at 3-7, ¶¶ 9-20. In this matter, Plaintiff's counsel zealously litigated on behalf of Plaintiff and the classes against sophisticated and experienced defense counsel, and obtained an excellent recovery for both Plaintiff and class members.

Plaintiff and his counsel have, therefore, adequately represented the classes.

**III.    The settlement treats class members equitably.**

Rule 23(e)(2)(D) requires that a court confirm that a class action settlement treats all class members equitably. The Advisory Committee's Note to Rule 23(e)(2)(D) advises that courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that

bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory committee's note (2018).

Here, class members have the same claims as other members of the respective classes. Correspondingly, the settlement provides that each participating class member will receive an equal portion of the respective settlement funds. Also, the respective releases affect class members in the same way. As such, this factor supports final approval of the settlement. *See Hale v. State Farm Mutual Automobile Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079, at *5 (S.D. Ill. Dec. 16, 2018) ("This proposal is fair and equitable because the class members' interests in the Avery judgment were undivided when they were lost and, thus, each class member's damages were identical. The proposed Settlement therefore entitles each class member to an equal, pro-rata share of the Settlement fund.").

## IV. Distribution of notice satisfied due process requirements.

Rule 23 requires that "the court must direct to class members that best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Fidel v. Farley*, 534 F.3d 508, 513 (6th Cir. 2008). "Due process does not, however, require *actual* notice to each party intended to be bound by the adjudication of a representative action." *Id.* at 514.

20

Distribution of notice here far exceeded this minimum standard. In particular, KCC used all reasonable efforts to provide direct mail notice to each member of the settlement classes. *See* Exhibit A, ¶¶ 5-9. Additionally, KCC supplemented direct mail notice with publication notice, dedicated settlement websites, and toll-free telephone numbers. *See id.*, ¶¶ 10-12.

In sum, the notice plan amply protected class members' due process rights.

## Conclusion

Plaintiff respectfully submits that the settlement—which requires Convergent to pay a combined $3,750,000 into all-cash, non-reversionary funds—constitutes an excellent result for class members. And for the foregoing reasons, he respectfully requests that this Court finally approve the settlement, and enter a final judgment and order in the form agreed to by the parties and submitted concurrently to this Court.

Dated: October 11, 2019          */s/ Aaron D. Radbil*

Aaron D. Radbil
Greenwald Davidson Radbil PLLC
401 Congress Avenue, Suite 1540
Austin, Texas 78701
Tel: (512) 803-1578
Fax: (561) 961-5684
aradbil@gdrlawfirm.com

Michael L. Greenwald
James L. Davidson
Alexander D. Kruzyk
Greenwald Davidson Radbil PLLC

7601 N. Federal Highway, Suite A-230
Boca Raton, Florida 33487
Tel: (561) 826-5477
Fax: (561) 961-5684
mgreenwald@gdrlawfirm.com
jdavidson@gdrlawfirm.com
akruzyk@gdrlawfirm.com

*Class Counsel*

Andrew Campbell
Attorney at Law
1000 Beach Street, Suite B West Entrance
Flint, MI 48502
Phone: (810) 232-4344
michiganbk@gmail.com

*Liaison Counsel*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed electronically on October 11, 2019, via the Court Clerk's CM/ECF system, which will provide notice to all counsel of record.

*/s/ Aaron D. Radbil*
Aaron D. Radbil